In the Matter of the Accounting of J. EWING DURAND et al., as Executors of LEWIS H. MORGAN, Deceased.

WALTER H. MORGAN, as Administrator of the Estate of LEMUEL S. MORGAN, Deceased, et al., Appellants; LEWIS P. Ross et al., as Trustees of the UNIVERSITY OF ROCHESTER, Respondents.

Will — validity of bequest of contingent remainder — statute regulating testamentary gifts to charitable and educational institutions — method of computing value of life estates and fund bequeathed to institution.

A testator directed that upon the death of his wife and son without leaving descendants his residuary estate should be disposed of as follows: By clause 3, that with the exception noted therein, his estate should be converted into money and paid over "To the trustees of the University of Rochester" for the purposes thereinafter named.

The testator further provided: "4th. Upon the occurrence of the events before named, the death of my son without child, I desire to use my said estate for the purpose of female education of high grade in the city of Rochester and under the management of the trustees of said University, the said institution to be made a part of said University if the trustees choose to make it such or to be kept independent, and subject to their management and control. When said trustees shall have signified their acceptance of said devise and bequest, I direct my said executors to pay over the said proceeds of my estate into the hands of said trustees of the University of Rochester to be held by them as a perpetual fund, and the income thereof to be devoted to the objects named."

Testator further provided by the 5th clause, after stating reasons therefor: "I would much prefer that the fund herein provided be used in connection with other funds contributed for the same object, that an institution might be created commensurate with the position and wants of Rochester."

By clause 6 he gave to his son the use of his library and collections and cases during his life, and after his decease "to the institution named herein, should the trustees of the University accept the trust hereby created."

*Held,* that these clauses made an absolute bequest to the university taking effect in possession immediately upon the death of the surviving wife or son and did not create trusts for the benefit of some other institution or corporation to be organized.

The bequest to the university became operative, so far as the payment of the money was concerned, at the end of the joint lives of the wife and son.

In determining whether the will violated chapter 360 of the Laws of 1860, which prohibits a person having a husband, wife, child or parent, from giving by will more than one-half his or her estate to charitable or literary corporations, the court must take the amount of the testator's estate as of the date of his death and compute the then present value of the life estates and of the fund ultimately to go to the university. In making this computation it is proper to compute the value and amount of the life interests under tables based upon the probabilities of life, rather than on the lives as they were actually extended.

*Matter of Durand,* 127 App. Div. 945, affirmed.

(Argued February 9, 1909; decided March 5, 1909.)

APPEAL from an order of the Appellate Division of the Supreme Court in the fourth judicial department, entered July 7, 1908, which affirmed a decree of the Monroe County Surrogate's Court overruling objections to and settling the accounts of the executors of Lewis H. Morgan, deceased.

All of the objections to the accounts presented on this appeal were based on the alleged invalidity of certain provisions contained in said will.

The testator died in the year 1881, leaving him surviving a wife, who died two years later, and a son, who died in 1905. He left an estate consisting of personal property, which, after allowing for shrinkage and deducting debts, expenses, special legacies and commissions, apparently amounted to something less than $80,000. His will, after giving the use and income of his residuary estate, real and personal, to his wife and son and to the survivor of them for life to be divided in a manner specified, by the provisions whose validity is challenged then directed as follows:

"3rd. In case of the death of my said son without child or children or lawful descendants (and said son died without leaving descendants), I direct my said executors, after the death of my said wife, to convert the whole of my estate into money, in time and manner at their discretion, except my family tomb at Mount Hope Cemetery, my library and cases and my collections, and to pay over the same to the Trustees of the University of Rochester for the purposes hereinafter named.

"4th. Upon the occurrence of the events before named, the death of my son without child, I desire to use my said estate for the purpose of female education of high grade in the City of Rochester, and under the management of the Trustees of said University, the said institution to be made a part of said University if the Trustees choose to make it such or to be kept independent, and subject to their management and control. When said Trustees shall have signified their acceptance of said devise and bequest, I direct my said executors to pay over the said proceeds of my estate into the hands of said trustees of the University of Rochester to be held by them as a perpetual fund, and the income thereof to be devoted to the objects named.

"5th. Since 1873, before which this plan was formed, my estate has shrunk, and it will be necessary to accumulate it,

or it may be that parties will co-operate in the work of found-ing a female college in Rochester, I would much prefer that the fund herein provided be used in connection with other funds contributed for the same object, that an institution might be created commensurate with the position and wants of Rochester.

" 6th. I give to my son the use of my library and collec-tions and cases for and during his natural life, and after his decease I give the same to the institution named herein, should the trustees of the University accept the trust hereby created."

The testator lived in Rochester, where was situated the University of Rochester. The charter of said university adopted before the will was made provided that " the present Trustees   *   *   *   and they and their successors shall be a body corporate and politic, by the name of the University of Rochester." The principal purpose of said institution as expressed in its charter is the " education of youth without distinction of sex," and prior to the date of the death of the testator's son and so before the happening of the contingency named in the will affecting it, said university was engaged in educating women and, therefore, prepared to carry out the wish of the testator for " female education of a high grade," and to execute the bequest.

*Arthur C. Rounds, William M. Wherry, Jr.,* and *Edgerton R. Williams, Jr.,* for appellants. The residuary bequest to the trustees of the University of Rochester was in trust for the purpose specified and not an absolute gift. And apart from the question of remoteness it cannot be sustained unless it be held a gift to the university upon a trust which the cor-poration is able and willing to assume. (*Cottman* v. *Grace,* 112 N. Y. 299; *Fairchild* v. *Edson,* 154 N. Y. 199; *Mur-ray* v. *Miller,* 178 N. Y. 316; *Leonard* v. *Burr,* 18 N. Y. 96, 107; *Phelps* v. *Pond,* 23 N. Y. 69; *Bascom* v. *Albert-son,* 34 N. Y. 584; *Matter of O'Hara,* 95 N. Y. 403; *Allen* v. *Stevens,* 161 N. Y. 122; *Mount* v. *Tuttle,* 183 N. Y. 358

*Geneva College* v. *Patterson,* 1 Denio, 61; 5 Denio, 618.) The bequest was contingent upon the trustees signifying their acceptance of the trust. This not having been done, the university's right to the bequest did not vest, on the death of Lemuel S. Morgan, the second life tenant, in July, 1905. (*Caw* v. *Robertson,* 5 N. Y. 125; *A. C. Society* v. *Trustees,* 2 Allen, 302; *State* v. *Blake,* 69 Conn. 64; *Levy* v. *Levy,* 33 N. Y. 97; *Booth* v. *Baptist Church,* 126 N. Y. 215; *Yates* v. *Yates,* 9 Barb. 324; *Haebler* v. *T. J. E. B. Co.,* 42 App. Div. 95; *Langdon* v. *Astor,* 16 N. Y. 1; *Acherley* v. *Vernon,* Willes, 153; *Marston* v. *Marston,* 47 Me. 495.) The residuary bequest in trust, being contingent upon the legatees signifying their acceptance of the trust, did not necessarily or in fact vest within or at the termination of two lives in being at the death of the testator and was, therefore, invalid. As to his residuary estate the testator died intestate and the executor of his widow and administrator of his son are entitled to the fund. (*Steinway* v. *Steinway,* 163 N. Y. 183; *Smith* v. *Edwards,* 88 N. Y. 92; *Everitt* v. *Everitt,* 29 N. Y. 39; *Rose* v. *Rose,* 4 Abb. Ct. App. Dec. 108; *Levy* v. *Levy,* 33 N. Y. 97; *Shipman* v. *Rollins,* 98 N. Y. 311; *Booth* v. *Baptist Church,* 126 N. Y. 215; *Manice* v. *Manice,* 43 N. Y. 303; *Chipman* v. *Montgomery,* 63 N. Y. 221; *Greenland* v. *Waddell,* 116 N. Y. 234.) The bequest of the testator's library, collections and cases was either a contingent gift to an "institution" not yet created, or if construed as a gift to the university was in trust. In either view it was contingent upon an event not necessarily to happen within two lives, and was void. (Gray on Perpetuities, § 2268; 1 R. S. 761, §§ 1, 2; *Kane* v. *Gott,* 24 Wend. 641.) The University of Rochester is a benevolent, charitable, literary or scientific corporation, and under chapter 360 of the Laws of 1860 the residuary bequests are void, at least as to one-half of the estate. (*Chamberlain* v. *Chamberlain,* 43 N. Y. 424; *Amherst College* v. *Ritch,* 151 N. Y. 282; *McKeown* v. *Officer,* 6 N. Y. Supp. 201; *Morgan* v. *Durand,* 51 Misc. Rep. 523; *Rathbone* v. *Hooney,* 58 N. Y. 463; 2 Black on

Judgments [2d ed.], § 536; *Walker* v. *Taylor*, 15 App. Div. 452; *Steinway* v. *Steinway*, 24 App. Div. 104; 163 N. Y. 183.)

*Charles M. Williams* for respondents. The bequest is not a trust at all, but a gift outright to the university. (*Morgan* v. *Durand*, 51 Misc. Rep. 530; *Matter of Roche*, 53 Misc. Rep. 187; *Johnston* v. *Hughes*, 187 N. Y. 446; *Hasbrouck* v. *Knoblauch*, 59 Misc. Rep. 99; *Robert* v. *Corning*, 89 N. Y. 226; *Matter of Griffin*, 167 N. Y. 71; *Currin* v. *Fanning*, 13 Hun, 458; *Matter of Isbell*, 1 App. Div. 158; *Shipman* v. *Rollins*, 98 N. Y. 311; *Burrill* v. *Boardman*, 43 N. Y. 254; *Allen* v. *Stevens*, 161 N. Y. 122.) The bequest does not violate the Statute of Perpetuities. (*Morgan* v. *Durand*, 51 Misc. Rep. 529; L. 1877, ch. 14, section 4; *Burrill* v. *Boardman*, 43 N. Y. 254; *Matter of Bailey*, 10 N. Y. Supp. 879; *Matter of Roberts*, 112 App. Div. 732; *Bird* v. *Merklee*, 144 N. Y. 544; *Spitzer* v. *Spitzer*, 38 App. Div. 436; *Hope* v. *Brewer*, 136 N. Y. 135; *Shipman* v. *Rollins*, 98 N. Y. 311; *Mee* v. *Gordon*, 187 N. Y. 401; *Matter of Bogart*, 43 App. Div. 583; *Frazer* v. *Hoguet*, 65 App. Div. 192; *Chanler* v. *N. Y. El. R. R. Co.*, 34 App. Div. 307.) The bequests to the trustees of the university are not void by reason of indefiniteness. (*Morgan* v. *Durand*, 51 Misc. Rep. 535; L. 1893, ch. 701; *Adams* v. *Perry*, 43 N. Y. 487; *Power* v. *Cassidy*, 79 N. Y. 602; *Matter of Shattuck*, 118 App. Div. 888; *Johnston* v. *Hughes*, 187 N. Y. 446; *Dodge* v. *Williams*, 46 Wis. 70; *Matter of Bailey*, 10 N. Y. Supp. 879; *Ruppel* v. *Schlegel*, 7 N. Y. Supp. 936; *Rushmore* v. *Rushmore*, 12 N. Y. Supp. 776; *Matter of Crane*, 12 App. Div. 271.) The gift of the library cases and collections under the 6th provision of the will is valid. (*Morgan* v. *Durand*, 51 Misc. Rep. 533.) The trustees of the University of Rochester have power to accept and receive the bequest in their corporate capacity. (*Morgan* v. *Durand*, 51 Misc. Rep. 529; *Richards* v. *Hartshorne*, 110 App. Div. 650; *Shipman* v. *Rollins*, 98 N. Y. 311; *F. L. & T. Co.* v. *Shaw*, 127 App. Div. 662.) Chapter 360 o

the Laws of 1860 does not apply. (*Allen* v. *Stevens*, 161 N. Y. 123; *Hollis* v. *D. T. Seminary*, 95 N. Y. 166; *Matter of Teed*, 76 Hun, 567; *Matter of Runk*, 55 Misc. Rep. 478; *Frazer* v. *Hoguet*, 65 App. Div. 192; *St. John* v. *Andrews Institute*, 191 N. Y. 273.)

HISCOCK, J. The specific claims of invalidity of the testamentary clauses involved in this controversy and quoted above, are in substance:

*First.* That the residuary clauses create a trust either in the trustees of the University of Rochester as individuals or in the university for the benefit of some independent and distinct corporation or institution, and that inasmuch as they expressly required as a condition precedent to their becoming effective, an acceptance by said trustees which might not be given until after the death of the testator's wife and son, they provided for a possible suspension of absolute ownership and of the power of alienation for an indefinite period in addition to said two lives and, therefore, were invalid in this respect even though otherwise valid.

*Second.* That the specific bequest of the testator's library, etc., if not attempting to create a trust subject to the foregoing vice, contemplated a direct gift to a separate institution to be organized at some indefinite date and, therefore, was contingent on an event which might not happen within said two lives, and void.

*Third.* That said provisions, if otherwise valid, gave to Rochester University a share of testator's entire estate in excess of that which he was permitted so to give by chapter 360 of the Laws of 1860, which prohibits a person having a husband, wife, child or parent from giving by will more than one-half of his or her estate to charitable or literary corporations.

We shall decide the questions submitted to us in the order in which they are presented by these various claims.

We think that it is so plain as to require little discussion that the testator intended to make his devise and bequest not

to the trustees of Rochester University as individuals, but to them as representing and being the corporation itself.  As we have already seen, the charter itself described the trustees and their successors as constituting a body corporate to be known as the University of Rochester, and if we not unnaturally assume an acquaintance by the testator with this charter, it amply justified him in designating the corporation in and by the words which he employed.  Moreover, a consideration of the entire scheme disclosed by the clauses before us makes it quite impossible to believe that he intended to deal with the trustees as a shifting collection of individuals without any provision for substitution on death or other retirement, but, on the other hand, such consideration does make it clear that he had in mind the university itself as the lasting and unchanging beneficiary which would receive his property and carry out his purposes which were of no temporary character, and that the surrogate was entirely justified in interpreting the phraseology which was used as meaning the university. (*Currin* v. *Fanning*, 13 Hun, 458 ; *N. Y. Inst. for the Blind* v. *How's Exrs.*, 10 N. Y. 84 ; *Manice* v. *Manice*, 43 N. Y. 303.)

This being so, the surrogate was right in interpreting the various clauses under criticism as making an absolute bequest to the university taking effect in possession immediately upon the death of the surviving wife or son and not as creating trusts for the benefit of some other institution or corporation.

Speaking first of the clauses other than that relating to the library and collections and cases, we have in the first place an absolute and complete direction to pay over the money into which testator's estate was to be converted to the trustees of the university, and then is specified the purpose thereof.  This purpose was female education in the city of Rochester " under the management of the Trustees of said University," and this latter direction, taken in connection with the primary clause, makes it very clear that the testator did not contemplate the university as a mere trustee paying over the fund or income thereof to some other independent organization, but regarded

it as his direct beneficiary, which would expend his property and itself directly carry out his wishes. It is true that the testator speaks of the new foundation as an "institution," and suggests, but does not command, that it may "be kept independent," although always "subject to their (the trustees) management and control." But in our judgment he uses this term "institution" as meaning not more than a department or college, and when he suggests the possibility of its being kept "independent," he means no more than a department or college, perhaps located apart from and in its working organization distinct from the rest of the university, as might be entirely fitting in the case of a woman's college, although still a part of the university. We probably should not be doing violence to the principles of judicial notice if we took cognizance of the fact that in many if not all of the large universities there have been founded various departments which, although part of the university and owned and controlled by its corporation, are still designated and to a certain extent organized as distinct colleges.

Finally, the later clause of this provision directing payment of the proceeds of the estate to the trustees of the university "when said Trustees shall have signified their acceptance of said devise and bequest," is counted on as helping first the theory of a trust and then as sustaining the claim of a condition precedent, namely, acceptance occurring some time after the two lives of the wife and son, and thus unduly postponing the vesting. This resort must also fail. The preceding clauses having adequately and completely directed and provided for a proper, timely and absolute vesting of the estate, we should be conservative under any circumstances in construing a later provision as changing or impairing this result. But in this case it would be difficult, even if desirable, to impute any such meaning to the testator's language as is urged by appellants. He was a layman and erroneously he may have deemed it necessary that the beneficiary, being a corporation, should signify that acceptance which the law implied in order to make his bequest effective, or he may have desired to procure

from the university a formal though unnecessary acceptance of his bounty in order that it might seem the more fully to be bound by the wishes which accompanied such bounty. Or, of course, some other notion may have been floating through his lay mind. What, however, is apparent is this, having already made a bequest which absolutely vested his property at death, this clause which relates to the mere physical payment over of the proceeds does not adequately express or fairly indicate any intention to destroy anything already accomplished by prior clauses even in the absence of a formal assent. It really requires no more than is necessarily involved in the case of every bequest, namely, the indication of a willingness on the part of the beneficiary to receive before the executors can complete payment.

And so we do not find in any of these provisions or terms any controlling features which require us with justifiable reluctance to build up and impose a trust on the testator's will to the sole end that we shall then be compelled to condemn as unlawful the entire structure which he has created with such commendable purpose.

An especially applicable authority for the construction that here was an absolute and direct bequest instead of the creation of a trust is found in *Matter of Griffin* (167 N. Y. 71, 75). There the testator disposed of his residuary estate by a clause which provided: "Upon the death of my said wife, I give and bequeath, grant and devise to the Round Lake Association * * * all the rest, residue and remainder of my estate real and personal, * * * the amount so hereby given to said association to be prudently invested by it, and the income and profits arising therefrom to be devoted and applied by said association to the support and maintenance of the school at said Round Lake known as the Round Lake Summer Institute."

In that case, as here, it was claimed that a trust had been created, but Judge Cullen, writing for the majority of the court, said: (p. 84.) "His (testator's) gift to the Round Lake Association was doubtless for the purpose expressed in his will

of maintaining a school by the association, as had been done for some time before the incorporation of the academy, but still for the purpose of maintaining a school which should be a part of and entirely dependent upon the association, and not for a separate corporation that in the future might become wholly disassociated from the Round Lake Association. In other words, he intended to give his property to the Round Lake Association, to maintain its own school, not as trustee for the benefit of another, though doubtless it may use the other for the purpose so long as the parties contract therefor."

It is also well settled that a direction that the income of the fund thus bequeathed shall be applied to the purposes named, does not create a trust and is valid. ( *Wetmore v. Parker*, 52 N. Y. 450; *Bird* v. *Merklee*, 144 N. Y. 544.)

By substantially similar processes we reach the conclusion that the subsequent bequest of testator's library and collections and cases " to the institution named herein should the trustees of the University accept the trust hereby created," is a direct and absolute bequest to Rochester University and not to it in trust or to some institution at some indefinite time to be organized. The word " institution " in this clause from its connection might quite properly be interpreted as referring to the university itself. But if, as desired by the appellants, we disregard this interpretation we think that the fair meaning of the word still is satisfied by construing it to mean the department or college which was to be organized for the education of women. And upon similar principles, we do not construe the words " accept the trust " as meaning any formal acceptance of a legal trust, but rather as meaning and referring to the discharge of the duties necessarily devolving upon the university in organizing and managing the new cause of education being provided for by the testator in case his bequest should be received.

In our opinion, the interpretation which we have thus given to the clauses under discussion is a fair and reasonable one, and leads us no further than we are called to go by well-estab-

lished rules of construction for the purpose of upholding and giving validity to the testato..'s disposition of his property.

We come to the last claim of invalidity. The bequest to the university became operative so far as the payment of the money was concerned at the end of the joint lives of the wife and son. In determining whether the will violated the act of 1860, we must take the amount of the testator's estate as of the date of his death and compute the then present value of the life estates and of the fund ultimately to go to the university. In making this computation, it is proper to compute the value and amount of the life interests under tables based upon the probabilities of life, rather than on the lives as they were actually extended. We doubt that the appellants, upon whom rests the burden of showing the invalidity of testator's disposition, either by findings or by requests to find, have sufficiently presented this question. If, however, we look beyond the findings unto the evidence, it becomes apparent that, computed upon the basis indicated, the provisions in favor of the respondents do not violate the act to which we have referred. (*Hollis* v. *Drew Theological Seminary*, 95 N. Y. 166.)

The order appealed from must be affirmed, with costs.

CULLEN, Ch. J., HAIGHT, VANN, WERNER, WILLARD BARTLETT and CHASE, JJ., concur.

Order affirmed.