In the Matter of the Estate of LOUISE APPLE, Deceased.

Surrogate's Court, New York County, June 30, 1931.

381

*Melvin Apple*, for the executors.

*Otto A. Samuels*, for the petitioner, Morris Apple, the surviving husband.

*White & Case*, for the respondent, Relief Society for the Aged.

*William Weiss*, for Jewish Memorial Hospital.

FOLEY, S.   In this proceeding the surviving husband seeks to have determined his interest in the estate under the new form of section 17 of the Decedent Estate Law, which forbids, in certain cases, the bequest of more than one-half of the estate to charity. Incidental to the determination there is involved the effect of his right of election to take against the terms of the will under the recent enactment of section 18 of the Decedent Estate Law.   These

changes became law upon the recommendation of the Decedent Estate Commission and went into effect upon September 1, 1930.

The testatrix died on November 10, 1930. Her will was executed November 1, 1930. These facts vested in the surviving husband the newly-created right of election, since the will was made and the death took place after August 31, 1930. Chapter 229 of the Laws of 1929 had added the new section 18. It had likewise substantially changed in form the provisions of section 17. The general terms of the will gave the husband a legal life estate in the net residue. After his death the will directed the payment out of the remainder to certain persons, of legacies aggregating $4,000. These were preferred bequests. The balance of the remainder was directed to be paid to three charities in equal parts. The gross estate at the time of death, less debts, was $24,796.96. One-half thereof was $12,398.48. The surviving husband is seventy-four years of age and is stated to be ill and without means of support. By formal instrument he has elected to withdraw from the fund which is subject to his life estate the sum of $2,500 under the new privilege given to him by paragraph (e) of subdivision 1 of section 18 of the Decedent Estate Law. His right to receive that amount is unquestioned and the money has been paid to him. Under the new law the rest of the will stands. His life interest in the balance remains except as modified by the secondary part of this decision.

I hold that the amount of the statutory withdrawal of $2,500 must be considered in the computation as a benefit accruing to the husband as of the time of the death of the testatrix, and must, therefore, be included in the total benefits payable by bequest or devise to the group of non-charitable beneficiaries. Sections 17 and 18 are correlated and are not exclusive or contradictory of one another.

The second and more important question here involves the interpretation and effect of the new provisions of section 17. That section reads as follows: " Devise or bequest to certain societies, associations, corporations or purposes. No person having a husband, wife, child, or descendant or parent, shall, by his or her last will and testament, devise or bequeath to any benevolent, charitable, literary, scientific, religious or missionary society, association, corporation or purpose, in trust or otherwise, more than one-half part of his or her estate, after the payment of his or her debts, and such devise or bequest shall be valid to the extent of one-half, and no more. *The validity of a devise or bequest for more than such one-half may be contested only by a surviving husband, wife, child, descendant or parent. When payment of a devise or bequest to such society, association, corporation or purpose is postponed, in computing*

*the one-half part of such society, association, corporation or purpose,
no allowance may be made for such postponement or for any interest
or gains which may accrue after the testator's death."* (Italics indicate
new matter.)

The purpose of these amendments was set forth in the report
of the Commission (Consolidated Report, New York Legislative
Document No. 69, 1930, pp. 74, 90, 113, 276 and 289). An
explanatory note to the proposed legislation drafted by the Com-
mission was printed in the bill as introduced and as finally passed
by the Legislature. It thereby became an indication of the intent
of the Commission which recommended it as well as of the Legis-
lature which adopted it.

From a reading of the section in its amended form, and of the
interpreting note, two principal changes become obvious:

(1) The section as it existed before the amendment of 1929 had
prohibited a gift of more than one-half of the estate (after the
deduction of debts) to charities where the maker of the will left
a husband, wife, child or parent. The devise or bequest to
charities was valid to the extent of one-half and no more. The
section was a declaration of public policy to prevent imposition
upon a weak or yielding maker of a will. The original legislative
intent was clearly protection for the widow or husband or child
or relatives specifically mentioned in the statute. However, under
the interpretation of the courts, where there was an excess to
the charities over the one-half, distant heirs or next of kin, not
specifically enumerated as within the protection of the statute,
might object to the provisions of the will and were entitled to
participate by reason of the violation. The widow, or surviving
husband, might be entirely satisfied with the benefits provided
for them by the maker of the will, and might acquiesce in the
charitable gifts, however excessive. A nephew or niece or cousin,
not necessarily dependent upon the testator, if an heir or next of
kin, could protest and thereby obtain a benefit out of the surplus
intestate property. (*Robb* v. *Washington & Jefferson College*, 185
N. Y. 485, 491.) In order to avoid this situation, an amendment
was made by the statute of 1929 which limited the right to contest
the validity of the excessive gifts to charity to those within the
specified preferred class. No heir or next of kin not mentioned in
the section may now protest. If any one within the favored class
objects, the distribution of the intestate property, of course,
will be shared in by all the distributees whether specifically
mentioned in section 17, or not. This is for the reason that the
excess is to be treated like all other intestate property and dis-
tributable accordingly.

(2) The second change was the amendment which provided that where the payment of the devise or bequest to the charity was postponed, no allowance should be made in the computation of the one-half payable to the charity for such postponement. The purpose of this change was to supersede the rule laid down in *Matter of Seymour* (239 N. Y. 259, modifying 209 App. Div. 655, and 122 Misc. 343). In that decision the material portions of the will were as follows: A legal life estate to the husband in certain real property, the remainder to pass under the residuary clause; next, a gift of the residue in trust to the husband for life, with remainder to a charitable corporation. The husband survived the wife. At the time of the determination of the respective interests of the charity and of the heirs and next of kin, the husband was dead. The value of the estate was fixed as of the date of death of the testatrix. Debts were deducted. One-half of the net balance was apportioned to the charity as the legal limit of its share as of the date of death of the testatrix. The charity was, however, held by the Court of Appeals to be entitled to interest, compounded annually at the rate of five per cent, from the date of death of the testatrix to the date of the termination of the trust. By the application of this rule the accumulation of interest necessarily invaded the share tentatively apportioned, as of the date of death, to the heirs and next of kin since such intestate excess was required to be held within the trust under the terms of the will. A depletion of the shares originally set off to the relatives would continue from year to year by the accrual of compound interest. As time went on, the share of the heirs might be entirely absorbed for the benefit of the charity. " One-half and no more " at death to the charity became increasingly greater thereafter to the detriment of the heirs. The rule laid down in *Matter of Seymour* (*supra*) thus tended to complicate the computation of the respective benefits to the charitable and non-charitable beneficiaries. It impaired the legislative purpose of computing the respective interests as of the date of death of the testator. It delayed the final fixation. There is the greatest importance in the administration of an estate to fix promptly the shares of the persons interested and their right to receive these shares or to dispose of them by conveyance or will. Promptness and expedition were particularly important to the executor in order to procure a final assessment of the Federal inheritance tax and the State transfer or estate tax and to obtain allowance for fixed charitable exemptions. If postponement were to be considered and the actual termination of the trust by the passage of years awaited, confusion, uncertainty and delay were bound to result. Under some wills, if there was a present out-

right legacy to a charity and a remainder interest to the same or to another charity, no immediate payment of the absolute legacy could be made because of the uncertainty as to the possible violation of the section. The *Seymour* case furnished an additional difficulty because of the fact that it permitted the computation to be made by alternative methods. The value of the life estate — legal or equitable — might be determined either by computation based upon *expectancy*, or upon computation based upon *actual duration* of the life of the life tenant. Inferentially, if the actual life exceeded the expectancy the latter might be disregarded. While the difference between expectancy and actual life of the life tenant in the *Seymour* case was inconsequential, it should be noted that the choice of either alternative was recognized by that decision.

The amendment of 1929 to section 17* removed many of these difficulties. The original declaration of public policy by the Legislature to restrict the gift to charities to "*one-half and no more*" was emphasized. No allowance is to be made for postponement of the payment to the charity. The benefit, recognized by the *Seymour* case, of gains to the charity in the enhancement of the value of the assets, which might occur after death, was embodied in the new statute. Moreover, the effect of the amendment of 1929 in the great majority of estates was to establish finality in the fixation of the respective rights of the parties early in the administration of the estate. It also expedited the prompt determination of the death taxes. The amendments made to the section, therefore, were of advantage to both groups, to the preferred relatives and heirs and next of kin, and to the charitable corporations.

The terms of the new law are direct and simple. Interest or similar allowance for postponement after the testator's death, is eliminated. One-half of the estate, less debts, is to be fixed as of the date of death. That share is the limit which the charities may receive. The rest is vested in the spouse and next of kin with payment — immediate or in the future — to be made as the terms of the will may control.

Where the gift to the charity is contingent, the new law is also helpful. Assume a gift of the remainder to issue, or in default of issue, to a charity. Even though the remainder be contingent, the charity is enabled to know definitely and presently the amount of its expectant share. The minimum interest of the heirs may be presently fixed. The ultimate vesting in the charity will not diminish that interest. Complications may still result in the fixation of the value of contingent surviving life estates or where there is power to invade the principal. But these problems can be met when they actually arise. These difficulties are unavoidable in

---

* Laws of 1929, chap. 229.

the determination of the value of future contingent interests. In any event the shares of both classes are made more easy of ascertainment than under the previous rule.

The new terms of the section must now be applied to the circumstances of the present estate and the computation must be made. The value of the life estate is to be computed as of the testatrix's death upon the mortality tables and measured by the expectancy of the life tenant. (*Matter of Durand*, 194 N. Y. 477, 488; *Fisher* v. *Lister*, 222 App. Div. 841.) When that value is ascertained, it is to be deducted from the principal of the fund. The balance of the trust fund, or fund subject to the legal life estate, is the share which the remainder charities would take under the terms of the will if section 17 does not effect a limitation of amount.

The gross estate, less debts, as of the date of death is $24,796.96. One-half thereof is $12,398.48, which is the legal maximum which the charities may receive. The share of the husband, which he had withdrawn under his right of election, is $2,500. This is to be deducted from the fund which is subject to his life estate. The value of that fund is, therefore, $24,796.96, less $2,500, or $22,296.96. The value of the husband's life estate, based upon his expectancy in this fund (he was seventy-four years of age at his wife's death), is $5,421.28. The total benefits to the husband under the will, including his $2,500, therefore, are $7,921.28. Contained in the total fund, on which the life interest of the husband was computed, is a remainder of $4,000, payable to specified relatives after his death. The remainder interest, after deducting the value of the husband's life estate in this $4,000 fund, is $3,028. When the latter sum is added to the share of the husband, the total benefits to the non-charities total $10,949.28. The net value of the remainder payable to the charities under the terms of the will is ascertained by deducting the latter amount, $10,949.28, from $24,796.96 (gross estate, less debts), which leaves $13,847.68. This amount exceeds the one-half by the difference between the benefits under the will — $13,847.68 — and the legal limit, $12,398.48, or an excess of $1,449.20. The same result will be obtained by computing all the benefits passing to the non-charitable beneficiaries and subtracting that sum from the legal limit of one-half of the estate. The excess of $1,449.20 is presently payable to the surviving husband as next of kin since there was a merger of the amount of this intestate distribution and that part of his legal life estate dependent thereon. His title to this part of the fund became absolute both as to income and principal. (*Hume* v. *Randall*, 141 N. Y. 499; Real Prop. Law, § 152; Pers. Prop. Law, § 11; *Matter*

*of Davies*, 242 N. Y. 196; *Matter of Allen*, 111 Misc. 93, 132; affd., on opinion of Surrogate SLATER, 202 App. Div. 810; modfd., 236 N. Y. 503.) If the life estate were strictly equitable, such merger would not occur and the excess intestate share would be retained within the trust until its termination. (*Matter of Franklin Trust Company*, 190 App. Div. 575.)

Submit decree on notice construing the will and fixing the respective shares of the charities and the husband accordingly.