St. Joseph's Hospital, Respondent, *v.* John J. Bennett, Jr., as Attorney-General of the State of New York, Appellant.

Argued April 3, 1939; decided July 11, 1939.

*John J. Bennett, Jr., Attorney-General (Irving H. Lessen* and *Henry Epstein* of counsel), appellant.

*M. Harold Dwyer* and *George R. Fearon* for respondent.

Finch, J. This is an appeal from an order of the Appellate Division of the Supreme Court, fourth department, affirming a declaratory judgment of the Supreme Court at Special Term, Onondaga county, granting the relief prayed for in the complaint. The Supreme Court denied defendant appellant's motion for a dismissal of the complaint after issue had been joined, and granted plaintiff's motion for judgment on the pleadings.

Plaintiff is a charitable corporation which operates a hospital in Syracuse. It received and accepted a bequest under the following clause of the will of one George Doheny, deceased:

"*Seventh*: All the rest, residue and remainder of my estate, both real and personal, I give, devise and bequeath to St. Joseph Hospital, the Syracuse Memorial Hospital, the House of Providence, St. Vincents Asylum and School (Madison St.) the Syracuse Free Dispensary, the Syracuse Homeopathic Hospital, St. Mary's Maternity Hospital and Infants Asylum, the Onondaga Orphans Home and the Syracuse Home Association (commonly known as the Old Ladies Home) all of Syracuse, N. Y., share and share alike, one-ninth to each to be held as an endowment fund and the income used for the ordinary expenses of maintenance."

Plaintiff's share has been kept separate and intact and, at the time of this action, consisted of personal property valued at $147,932.93. The income from the fund has been used to meet "the ordinary expenses of maintenance" of the institution. The real estate of plaintiff is encumbered by a mortgage of $175,000. By this action, plaintiff sought authorization to apply the fund in partial payment of the mortgage debt or in its judgment to use the principal of the fund for objects within its corporate powers other than meeting the ordinary expenses of maintenance. The Attorney-General opposed on the grounds that the bequest was a gift in trust, that the intention of the testator was to create a perpetual fund, the income from which was to be used for the ordinary expenses of maintaining the plaintiff institution, and that any use of the principal or any other use of the income would be a violation of the testator's intention and of the fiduciary duties of plaintiff. The declaratory judgment, which was affirmed by a divided court in the Appellate Division, held that the bequest to plaintiff did not create a trust but an absolute gift, and that the plaintiff need not maintain the gift intact as an endowment fund but that it could use the income and principal of said fund for any of its corporate purposes, in particular toward the discharge of the mortgage on its property.

In the case at bar it is practically conceded that the language of the bequest shows the intention of the testator that his gift be held as a permanent fund. The testator has coupled in one sentence gifts to charitable corporations and a statement that each gift is " to be held as an endowment fund and the income used for the ordinary expenses of maintenance." The gift and the statement of its purpose cannot be separated, one from the other. Not only was there an express direction that the principal be held, but this direction was fortified by the use of the words " endowment fund." The term " endowment " has been defined as the bestowment of money as a permanent fund, the income of which is to be used in the administration of a proposed work. In still further restriction, direction is

given to use only the income. Giving to these plain words their ordinary meaning, the intention of the testator is clear to direct the holding of a permanent fund, the income of which is to be used in the administration of the work. Though these words may not avail to create a legal trust, they furnish a direction and restriction upon the use of the gift. No different result is reached through the application of the rule of construction that where language employed in a will looks in the first place towards a gift without restrictions, such gift cannot be cut down by later words unless these later words express as clear an intention to cut down the gift as the former do to make the gift. In this case the later words are of equal force with the former and are free from ambiguity.

The question here presented is whether the clearly expressed direction of the testator must be obeyed. The answer to that question does not depend upon whether the gift was absolute or created a trust, or whether the testator annexed a direction or a technical condition to the gift. The authorities sustain the validity of the direction of the testator, and equity will afford protection to a donor to a charitable corporation in that the Attorney-General may maintain a suit to compel the property to be held for the charitable purpose for which it was given to the corporation. (American Law Institute, Restatement of the Law of Trusts, vol. 2, ch. 11, p. 1093.) Nothing in authority, statute or public policy has been brought to our attention which prevents a testator from leaving his money to a charitable corporation and having his clearly expressed intention enforced. In the case at bar, no question is raised as to the reasonableness or propriety of the restriction.

The Legislature, many years ago, enacted statutes providing for the incorporation of charitable corporations and permitting such corporations to hold funds in perpetuity. The statute against perpetuities never applied to gifts to such corporations. " The corporate body is legally immortal; and it is the very nature of contributions to it, to withdraw the subject of them from every kind of circulation; their

manifest object being to sustain continually the charitable or religious institutions, in carrying out their pious or benevolent designs." (*Williams* v. *Williams*, 8 N. Y. 525, 534.) In the same case it was also held that the statute of perpetuities did not apply to gifts to individuals upon charitable trusts, and that courts of equity might give effect to a devise or bequest for charitable uses, although defective, for the want of a grantee or donee capable of taking. That doctrine was later rejected by this court in *Holmes* v. *Mead* (52 N. Y. 332), but the principle that a charitable corporation might take an absolute gift to be held in perpetuity for purposes prescribed by its charter was expressly approved.

In considering the effect of the cases thereafter decided by this court, the distinction drawn in *Holmes* v. *Mead* must be kept in mind. Gifts in perpetuity to a corporation, the income to be applied to any of its corporate purposes, were valid, though such gifts to a corporation upon a general charitable trust and not for its own benefit, were invalid. The courts thereafter gave to wills whenever possible a construction which would sustain the charitable gift rather than render it invalid. In the absence of language requiring other construction, a gift to a charitable corporation was construed as a gift to the corporation not in trust for others but a gift in perpetuity for a corporate purpose. The rule of construction has been followed even after the Tilden Act (L. 1893, ch. 701, now Real Prop. Law [Cons. Laws, ch. 50], § 113; Personal Prop. Law [Cons. Laws, ch. 41], § 12) would have saved the charitable gift. We should not now abandon that rule, but even when the courts found that a gift to a charitable corporation for a corporate purpose was an " absolute " gift and not a trust, they also indicated that directions in regard to the manner in which the gift was to be held and used would be enforced.

Thus in *Wetmore* v. *Parker* (52 N. Y. 450), decided one week after *Holmes* v. *Mead* (*supra*) the court said (at p. 459): " No mortmain law, restrictive as they have sometimes been, ever prevented the donors from making their gifts in such

terms as would preserve the principal from dissipation. It does not create a trust in any such sense, as that term is applied to property. The corporation uses the property, in accordance with the law of its creation, for its own purposes; and the dictation of the manner of its use, within the law by the donor, does not affect its ownership or make it a trustee. A person may transform himself into a trustee for another, but he cannot be a trustee for himself."

Again in *Bird* v. *Merklee* (144 N. Y. 544), the court said (at p. 550): " The fact that the testator has designated the purpose for which this legacy must be used does not indicate a desire upon his part to create a trust. If it were necessary in order to sustain the bequest these words of designation by the testator might be treated as merely precatory, but we think it was entirely competent for him to apply his bounty to the whole or any one or more of the various purposes for which the corporations are authorized to hold property. This is fully reasoned by Judge DENIO in *Williams* v. *Williams* (8 N. Y. at bottom p. 530).

" The fundamental error in this case, in the court below, and in cases that are frequently coming to the attention of this court, is the failure to recognize the fact that gifts to religious and charitable corporations to aid in carrying out the purposes for which they are organized, whether by expending the principal of a bequest, or the income of a bequest to be invested in perpetuity, do not create a trust in any legal sense, do not offend against the statutes of perpetuities, are not to be judged by any of the well-known rules pertaining to the law of trusts as applied to private individuals."

It is submitted that when the opinions in these cases are read as a whole, they merely decided that gifts to a charitable corporation, though subject to enforceable restrictions, do not create a trust in the legal sense. In *Bird* v. *Merklee* (*supra*) the gift was attacked on the ground that it was invalid because it created a trust with no defined beneficiary, and the court held only that it was not a trust but a gift to a corporation for a single corporate purpose

which the corporation *must* carry out. In *Matter of Griffin* (167 N. Y. 71) the only question was whether a gift to a corporation of a fund with instructions to maintain the principal intact and to use the income for a specific purpose within the corporate powers, but which the corporation promoted through a subsidiary or related corporation, created a trust for the subsidiary corporation or whether the corporation which received the principal might use the income if it saw fit to carry out that purpose itself. Though the court held that no trust for the subsidiary corporation was created, the reason for the holding is that the instructions might be carried out without creating a trust. The question in the case of *Matter of Durand* (194 N. Y. 477) was similar. The gift there was to the trustees of the University of Rochester and their successors, to be held by them as a " perpetual fund " and the income to be used for " female education of high grade in the City of Rochester, and under the management of the Trustees of said university " (p. 479). The decision of the court was that the gift was intended as a gift to the University of Rochester for one of its corporate purposes. It is noteworthy that far from intimating that the university was not bound to carry out the direction, the court reached its decision that the gift was intended as a gift to the corporation and not as a trust because, it is clear, so the court said, that the testator " had in mind the university itself as the *lasting and unchanging beneficiary* which would receive his property and carry out his purposes which were of no *temporary* character " (p. 484). (Italics not in original.) The testator in his will required that there be express acceptance of the terms of the gift. The court said that the terms of the bequest would be binding without express acceptance. The testator " was a layman and erroneously he may have deemed it necessary that the beneficiary, being a corporation, should signify that acceptance which the law implied in order to make his bequest effective, or he may have desired to procure from the university a formal though unnecessary acceptance of his bounty in order that it might seem the more fully

to be bound by the wishes which accompanied such bounty " (p. 485).

The case of *Sherman* v. *Richmond Hose Co.* (230 N. Y. 462) again illustrates the same rule. The gift was absolute for a corporate purpose. It was not a trust in a technical sense. None the less the court held that the corporation could not divert the fund from its purpose. No authority has been brought to our attention that a gift to a charitable corporation with the express direction that it be applied to a specific corporate purpose in a specific manner may be accepted by the corporation, and then used for a different corporate purpose in a different manner. No trust arises, it is true, in a technical sense, from such a gift for trustee and beneficiary are one. The charitable corporation is not bound by all the limitations and rules which apply to a technical trustee. It may not, however, receive a gift made for one purpose and use it for another, unless the court applying the *cy pres* doctrine so commands.

It follows that the judgments should be reversed and judgment directed for the defendant, without costs.

Hubbs, J. (dissenting). George Doheny, deceased, was an attorney at law residing at Syracuse, N. Y. The plaintiff is a charitable corporation located at Syracuse. The seventh paragraph of Mr. Doheny's will provided:

" *Seventh*: All the rest, residue and remainder of my estate, both real and personal, I give, devise and bequeath to St. Joseph Hospital, the Syracuse Memorial Hospital, the House of Providence, St. Vincents Asylum and School (Madison Street), the Syracuse Free Dispensary, the Syracuse Homeopathic Hospital, St. Mary's Maternity Hospital and Infants Asylum, the Onondaga Orphans Home and the Syracuse Home Association, (commonly known as the Old Ladies Home) all of Syracuse, N. Y., share and share alike, one ninth to each to be held as an endowment fund and the income used for the ordinary expenses of maintenance."

The plaintiff accepted the bequest and segregated the funds, kept them invested, and used the income for

" ordinary expenses of administration." The property of plaintiff is encumbered by a real property mortgage of $175,000. This action is for a declaratory judgment decreeing that the gift to plaintiff was absolute and that it may legally use the fund to pay off the mortgage and for other purposes of the corporation. The Special Term so decided and the judgment was affirmed by the Appellate Division, one justice dissenting. The Attorney-General contends that the funds bequeathed constitute a trust fund that must be held " as an endowment fund and the income used for the ordinary expenses of maintenance," as stated in the will.

It is a familiar principle of law that when a will in the first place makes an absolute gift such gift cannot be cut down by later words of the will unless the later words express as clear an intent to cut down the absolute gift as the prior words do to make the gift. In *Matter of Hayes* (263 N. Y. 219, 226) we said: " Here we have words constituting an absolute gift followed by words in the same sentence which do not disclose a clear intention to cut it down. Under such circumstances, courts favor giving effect to the absolute gift. (*Clark* v. *Leupp*, 88 N. Y. 228; 1 Perry on Trusts [6th ed.], p. 162, § 115.) The question always is whether the maker of the will by the language used, intended to impose an obligation on the legatee to carry out an expressed purpose or having expressed a wish intended to leave it to the legatee to act in accordance therewith or not in his discretion." In that case we were discussing the question whether the words used in the will created a trust.

The courts have found great difficulty in determining whether words which are claimed to have the effect of cutting down words of absolute gift have that effect in particular cases. The cases throughout the country are in conflict. In this State the tendency seems to be to hold that where there are words of absolute gift such gift will not ordinarily be cut down by subsequent words. The donor was a well-known, experienced lawyer who presumably knew the law applicable as announced by this

court in various opinions. In seeking his intent as expressed in the language used, we must assume that he used it having in mind the construction placed upon similar language by this court and other courts of the State.

It should be noted that the bequest here in question is not under any construction a bequest for a specific purpose, as for instance a bequest with which to build a hospital to be called Doheny Memorial Hospital. A bequest to be held and income to be used for " ordinary expenses of maintenance " constitutes a bequest at most for a very general purpose, leaving a very wide discretion to the corporation. What constitutes " ordinary expenses of maintenance " may cover a very wide field. It may in certain circumstances justify the use of the income on the fund to build a new addition to the hospital. Wherever a will does not in express terms create a trust and the question is whether the words used shall be construed as precatory or as creating a trust the fact that the purpose expressed is not specific must be considered and the inference is that the words were used not for the purpose of creating a trust. (Bogert on the Law of Trusts [Hornbook Series], p. 48.)

The will does not name a trustee to hold the fund. It is true that a charitable corporation holds all of its funds in trust for the charitable purpose for which it was organized. That does not however, create a trust in a legal sense or make applicable rules of law governing trusts to private persons. (*Bird* v. *Merklee*, 144 N. Y. 544.) Such a corporation holds its funds in a sort of public trust, in a trust as provided in its charter, not in a trust created by a donor. (*Sherman* v. *Richmond Hose Co.*, 230 N. Y. 462.)

The gift was direct to the hospital, not as trustee for the benefit of another. (*Matter of Griffin*, 167 N. Y. 71, 75.) The hospital cannot be a trustee for itself in a legal sense. (*Brayton* v. *Rector of Christ Church*, 249 App. Div. 290; affd., 275 N. Y. 631.) The will does not provide for any forfeiture or gift over in case of a breach. It was not made to perpetuate the donor's name or that of any one else. It was an absolute gift for a charitable purpose

unless the language must be construed as imposing a trust. It seems to us that Justice UNTERMYER has stated the law accurately in *Corporation of the Chamber of Commerce* v. *Bennett* (143 Misc. Rep. 513). In that case funds had been given to the corporation for the relief of members who may have been reduced to poverty, and their widows and children. He wrote: " A gift to a corporation to be used for one of several corporate purposes does not consti-- tute a trust. ' Nor is the donation rendered the less absolute, or converted into a trust, because the donor specifies that the donation shall be employed for one of the uses or purposes for which the corporation was chartered.' " (p. 517.) There can be no doubt that the cases cited by Justice UNTERMYER and relied on by him fully support his statement. Those were cases decided prior to 1932. Certainly we have not expressly overruled those cases, and we would not intend to overrule them by implication. Attention is called to a few of those cases.

In *Wetmore* v. *Parker* (52 N. Y. 450, 459) the will of testatrix bequeathed to the Utica Orphans Asylum $25,000 to be invested by the trustees and the income expended in their discretion " for the support and maintenance of said asylum." Chief Judge CHURCH, writing for the court, said: " It does not create a trust in any such sense, as that term is applied to property. The corporation uses the property, in accordance with the law of its creation, for its own purposes; and the dictation of the manner of its use, within the law by the donor, does not affect its ownership or make it a trustee."

In *Bird* v. *Merklee* (*supra*, p. 548) the will bequeathed to the Methodist Episcopal Church a part of the residuary estate " to buy coal for the poor of said churches." There was no direction to invest and use the income. Judge EDWARD T. BARTLETT said: " We * * * are of opinion that the testator contemplated no trust, but made a valid bequest to the churches " (citing *Wetmore* v. *Parker*, *supra*). " The fact that the testator has designated the purpose for which this legacy must be used does not

indicate a desire upon his part to create a trust." (p. 550.)

In *Matter of Griffin* (167 N. Y. 71, 75, 84) the will gave funds to The Round Lake Association " to be devoted and applied by said association to the support and maintenance of the school at said Round Lake known as the Round Lake Summer Institute." CULLEN, J., said, " Such a gift, though the corporation may be instructed to maintain the principal intact and use the income only for a specific purpose, does not create a trust " (citing *Wetmore* v. *Parker, supra,* and *Bird* v. *Merklee, supra*).

In *Matter of Durand* (194 N. Y. 477, 479) the will gave a fund to the trustees of the University of Rochester " to be held by them as a perpetual fund, and the income thereof to be devoted to the objects named " (female education). HISCOCK, J., wrote the opinion in this court and it was decided that there was an absolute gift instead of a trust (citing *Matter of Griffin, supra,* also *Wetmore* v. *Parker, supra,* and *Bird* v. *Merklee, supra*).

The will involved in *Sherman* v. *Richmond Hose Co.* (230 N. Y. 462, 466) bequeathed $10,000 to the Richmond Hose Company " to be kept at all times intact and the income * * * to be devoted to the reasonable and proper uses of said company for whatever purposes its members acting as an organization may see fit to direct." The city organized a paid fire department and the Richmond Hose Company was dissolved and a question arose as to where the $10,000 bequest should go. This court held that the bequest did not impose a trust, but that as the hose company was a charitable corporation, section 12 of the Personal Property Law applied. Therefore, that the *cy pres* doctrine applied and the fund should go to the city as the gift was a gift to charity impressed with a public trust. That case pointed the way for the decision in *Matter of Neher* (279 N. Y. 370) where the will gave a home in the village of Red Hook to the village to be used as a hospital. The village, being without necessary resources, petitioned the court to apply the *cy pres* doctrine. This court held that principle applicable under section 113 of the Real Property Law as the gift was

for a charitable purpose impressed with a public trust as in the *Richmond Hose* case (*supra*).

Appellant argues that the intent of the testator should control and that his intent is clear. Assuming that the intent is clear as contended by appellant, nevertheless the intent to be effective must be a legal intent enforceable under applicable principles of law.

It is urged by the Attorney-General that decisions made since 1873, when the case of *Holmes* v. *Mead* (52 N. Y. 332) was decided, and the passage of the Tilden statute (so called) in 1893 (L. of 1893, ch. 701), now embodied in section 113 of the Real Property Law and section 12 of the Personal Property Law, should no longer be followed as those decisions were made in an effort to avoid the effect of that decision and in all cases where possible to sustain charitable bequests as absolute gifts. That argument overlooks the fact that many of the cases heretofore cited were decided long after the passage of the Tilden Act.

An absolute bequest to a charitable corporation of a fund which a testator directs shall be held in trust by the corporation and used for a special purpose is, under the decisions of this court, in fact an absolute gift to the corporation, and the request or direction that it be used or held in trust for a special purpose are precatory words which do not in law compel the corporation to use the fund in the way directed by the testator. That is the law of this jurisdiction as announced in many decisions. It has become a rule of property and should be followed.

The order of the Appellate Division should be affirmed, with costs.

LEHMAN, LOUGHRAN and RIPPEY, JJ., concur with FINCH, J.; HUBBS, J., dissents in opinion, in which CRANE, Ch. J., concurs; O'BRIEN, J., taking no part.

Judgments reversed, etc.