20 Ariz. App. 157 (1973)
510 P.2d 1062
In the Matter of the ESTATE of Susan J. CRISWELL, Deceased.
ST. ANDREW'S EPISCOPAL CHURCH OF GLENDALE, a corporation, Appellant,
v.
The DIOCESE OF ARIZONA, a corporation, Appellee.
No. 1 CA-CIV 1875.
Court of Appeals of Arizona, Division 1.
June 14, 1973.
Max M. Klass, Phoenix, for appellant.
Lewis & Roca by Paul M. Roca and Douglas R. Chandler, Phoenix, for appellee.
Carson, Messinger, Elliott, Laughlin & Ragan by Lee R. Perry, Phoenix, for amici curiae St. Elizabeth's Mission and St. Michael & All Angels Mission.
HOWARD, Judge.
The matter in controversy concerns the interpretation of the will of the deceased, Susan J. Criswell. The pertinent provisions of the will are as follows:
"FIFTH: I hereby give, devise and bequath my home in Glendale, Maricopa County, Arizona, ... to ... Nettie Crawford, ... for her life, with remainder over at the time of her death to PROTESTANT EPISCOPAL CHURCH CORPORATION OF ARIZONA, a corporation, to be used for missions in Glendale and Phoenix, Arizona.
"SIXTH: All the rest, residue and remainder of my property and estate I hereby give, devise and bequeath to PROTESTANT EPISCOPAL CHURCH CORPORATION OF ARIZONA, a corporation to be used for missions in Glendale and Phoenix, Arizona."
The decedent died on November 13, 1955. On December 20, 1955, her will was admitted to probate and on June 4, 1959, the court entered a decree of distribution distributing the home to Nettie Crawford for her life and upon her death to the Protestant Episcopal Church Corporation of Arizona, a corporation, with the residue of the estate being distributed to Protestant Episcopal Church Corporation of Arizona, a corporation. Nettie Crawford, the life tenant, died on August 30, 1964. The administrator with will annexed of the Estate of Susan J. Criswell, deceased, did not file his receipt showing distribution in accordance with the order of June 4, 1959, until March 12, 1971 and at the time of this litigation, had not yet been discharged by the probate court.
On January 26, 1971, the appellee, The Diocese of Arizona, formerly the Protestant Episcopal Church Corporation of Arizona, a corporation, filed in the probate *158 proceedings entitled in the Matter of the Estate of Susan J. Criswell, deceased, its Petition for Interpretation of Will.[1] On April 8, 1971, the appellee also filed a separate action in the Maricopa County Superior Court for declaratory relief. The Complaint for Declaratory Relief and the Petition for Interpretation of Will were consolidated for trial in the superior court, it being stipulated by all parties that the court commissioner hear the consolidated actions.
In both its pleadings filed below, the appellee Diocese of Arizona alleged that it had received the home and the residuary estate. It then alleged that it was unclear as to the phrase "for missions in Glendale and Phoenix, Arizona". In particular, the said appellee contended that the phrase was capable of being interpreted in the following ways: (1) The assets were to be used only for the benefit of missions which were in existence in Glendale or Phoenix on October 6, 1951, the date of execution of the Criswell will; (2) the assets were to be used only for the benefit of missions in existence in Glendale or Phoenix on November 13, 1955, the date of the decedent's death; (3) the assets were to be used only for the benefit of missions in existence in Glendale or Phoenix on June 4, 1959, the date of the decree of distribution; (4) the proceeds from the sale of the realty were to be used only for the benefit of missions in existence in Glendale or Phoenix on August 30, 1964, the date of death of the life tenant, but other assets might be used in accordance with one of the other paragraphs; (5) the assets were to be used for the benefit of missions in Glendale or Phoenix, Arizona, then or which might subsequently be in existence without time limit; (6) no assets were to be used for the benefit of a parish notwithstanding that prior to the achievement of parochial status, the congregation constituted a mission eligible for assistance; and (7) if a congregation was, pursuant to the principles established in response to the foregoing possibilities, once entitled to be considered for assistance, such entitlement continued indefinitely notwithstanding the achievement of parochial status.
In both the complaint and petition the appellee enumerated various missions, congregations and parishes which might be entitled to the assets or funds of the estate depending upon judicial interpretation of the will. Appellee asked that the court, upon proper notice to those involved in the complaint for declaratory relief "... make and enter herein an Order declaring the legal relations of the defendants in respect to the proceeds of the decedent's estate in plaintiff's hand and determining the question of the proper construction and interpretation of the foregoing precatory language in decedent's will...." or in the wording of the petition for interpretation of will "... make and enter an Order interpreting such precatory language and directing Petitioner generally with respect to the use of the property hereinabove referred to, and specifically with respect to the various possible interpretation hereinabove set out."
Among those responding to the Petition for Interpretation of Will and Complaint for Declaratory Relief was the appellant, Episcopal Church of Glendale, a corporation.
At the trial it was stipulated that: the term "mission" as used in the Episcopal Church refers only to a recognized congregation which is not self-supporting, and is therefore under the financial control of the diocese (in the case of a diocesan mission) or of a parish (in the case of a parochial mission); the term "parish" meant a congregation or church which is self-supporting and has been recognized by the diocese as self-governing; on November 13, 1955, the date of the decedent's death, appellant St. Andrew's was a "mission" located in Phoenix, was re-located in Glendale in October, 1958, became a parish on December 19, 1965, and on May 17, 1968, was incorporated as St. Andrew's Episcopal Church *159 of Glendale; and on August 30, 1964, the date of death of the life tenant, St. Andrew's was a "mission" in Glendale, Arizona.
In the consolidated actions, appellant claimed it was entitled to outright ownership of a share of the property distributed under the will to the appellee.
The trial court made extensive findings of fact and conclusions of law contrary to appellant's position and concluded that no trust was created by the will, that the phrase in question was precatory, that the defendants took nothing and that the appellee was free in its uncontrolled discretion to use the funds for any mission, parochial or diocesan, which was then or might be located in Glendale or Phoenix, Arizona. The appellant appeals from the denial of its motion for a new trial and from the judgment entered by the trial court.
Appellant sets forth the following questions for review. (1) Does the law favor the early vesting of an estate in the absence of a clear intention to the contrary? (2) Did the court abuse its discretion and err in determining identity and qualification of beneficiaries as of 16 years after the death of the testatrix? (3) There being three diocesan missions in existence in Glendale and Phoenix, Arizona at the date of the death of the testatrix, did the court err in ignoring the expression of the testatrix that her property be used for missions in Glendale and Phoenix, Arizona? (4) Was the court at liberty to disregard parol evidence concerning the intention of the testatrix that her property be used for missions, in Glendale and Phoenix, Arizona? (5) If an unincorporated association cannot take under a will must a parent organization take for the benefit of those whom the testatrix intended to benefit? (6) The appellant, having been a mission in existence in Glendale and Phoenix, Arizona on the date of the testatrix' death, did the change of its status to a parish ten years after such death disqualify it as a beneficiary under the testatrix' will? (7) If a will does not create a trust but does create a special power in the nature of a trust, does the donee of the power have the discretion to appoint to anyone when the property was restricted to being passed on to certain specified individuals or to a specific class of individuals? (8) May this court set aside a clearly erroneous finding of the trial court where such finding is induced by an erroneous view of the law?
Appellant's position, as we have been able to decipher it, appears to be as follows. Paragraphs five and six of the will made it a beneficiary of a testamentary trust. Since the law in Arizona favors the vesting of estates, and since it was one of three missions in existence in Glendale and Phoenix when Susan Criswell died, it is entitled to one-third of the trust res. We do not agree.
The trial court found that a mission is a congregation which is not self-supporting or self-governing, being under the supervisory control of either the diocese or a parish, depending upon whether it is a diocesan or parish mission. Diocesan missions are supported in whole or in part by annual grants from the diocese and are under the immediate supervision of the bishop of the diocese who is director of all diocesan missions. The trial court also found that there was an ongoing program of mission establishment and development within the Diocese of Arizona. In the case of In re Havsgaard's Estate, 59 S.D. 26, 238 N.W. 130 (1931), the decedent's will gave a life estate to certain named beneficiaries with remainder to the Norwegian Lutheran Church of America "... to be used in the support and maintenance of foreign missions of said church...." The court noted that the church was a corporate entity one whose purposes were to maintain and conduct foreign missions. It held that no trust was created, stating:
"`A gift to a corporation or organization to enable it to carry out some or all of the purposes for which it was formed does not create a trust.' [citations omitted.]

*160 The rule above announced has had a general application. The reasons underlying the rule being that the purpose for which the property is left, being a part of the church and a department of the church itself that both the legal and the equitable title vest in the church, and this being true, the equitable title merges in the legal title. A person cannot be a trustee for himself.
In addition to the rule above announced and the authorities supporting the same, we believe that the words, `to be used in the support and maintenance of Foreign Missions of said Church,' simply explain the testatrix' motive and purpose in making the said gift to the church, and in this sense are precatory words only, and not sufficient in themselves to create a trust." 238 N.W. at 132.
The rule that where a gift is given to a corporation for the accomplishment of a corporate purpose makes the gift absolute and not in trust was also followed in the case of Zabel v. Stewart, 153 Kan. 272, 109 P.2d 177 (1941). A through annotation on the subject is also found in 130 A.L.R. 1101.
We note that in the case sub judice the court held that although no trust was created, the Diocese of Arizona was to use the same for existing or future missions, parochial or diocesan, in Glendale or Phoenix. Although it appears that the judgment restricts the use of the property, the appellee has not cross-appealed as to such restriction.[2] We therefore do not pass on the validity of the restriction imposed by the court but note parenthetically that some courts have held that although no trust arises in a technical sense from a gift and the charitable corporation is not bound by all the limitations and rules which apply to a technical trustee, it may not, however, receive a gift made for one purpose and use it for another. See, e.g., St. Joseph's Hospital v. Bennett, 281 N.Y. 115, 22 N.E.2d 305 (1939).
The judgment of the trial court is affirmed.
HATHAWAY, C.J., and KRUCKER, J., concur.
NOTES
[1] We express no opinion on the propriety of this procedure.
[2] Although the "Conclusions of Law" speaks of the obligation to expend the funds for missions as a moral obligation, the Judgment itself does not use such language.