In the Matter of the Application of AUGUST HERMAN and Others, Constituting the Board of Education of School District No. 5 of the Town of Machias, New York, Petitioners, for an Interpretation and Liberalization of the Act to Incorporate the TEN BROECK FREE ACADEMY, Paragraph 23 of the Will of PETER TEN BROECK under Section 12 of the Personal Property Law.

Supreme Court, Cattaraugus County, September 8, 1941.

*James S. Pierce* [*Mark Turner* of counsel], for the petitioners.

*W. W. Rasey*, for the trustees of the Ten Broeck Free Academy.

*James M. Cash, Jr.*, for the trustees of the Ten Broeck Free Academy and the Union Free School District No. 1 of the Town of Franklinville, N. Y.

*John J. Bennett, Jr., Attorney-General* [*Vincent Kiebala, Assistant Attorney-General*, of counsel], for the beneficiaries, appearing specially.

DIAMOND, J. The petitioners, above named, constituting the board of education of school district No. 5 of the town of Machias, have obtained an order addressed to the trustees of the Ten Broeck

Free Academy of Franklinville, N. Y., the board of education of union free school district No. 1 of the town of Franklinville, the board of education of the town of Farmersville, the appointing board of trustees of Ten Broeck Free Academy, and the Attorney-General of the State of New York, directing them to show cause why a decree should not be made directing said union free school district No. 1 of the town of Franklinville to account for all funds and property of Ten Broeck Free Academy, etc., and why the *cy pres* doctrine should not be applied to the alleged trust under which Ten Broeck Free Academy was created. The academy is situate in the town of Franklinville. All places mentioned are in the county of Cattaraugus.

Respondents, trustees of Ten Broeck Free Academy, union free school district No. 1, and the Attorney-General, have appeared in opposition to the petition. At the outset of the argument at Special Term, on the return· day of the order to show cause, the question of the jurisdiction of the court to entertain the motion was raised by the respondents. The argument was thenceforth directed only to that question, and this decision is addressed solely to that single issue. The merits of the case may be left for future determination.

In order to dispose of the sole question now before the court, a brief outline of the history of the subject of this litigation is essential. It appears ·that in and prior to 1862 there lived in the town of Farmersville, N. Y., in the vicinity of Franklinville, a public-spirited citizen named Peter Ten Broeck. He evidently amassed what was considered in those days a large fortune, which he desired to dispose of at a time when free public education, if it existed at all, was a mere name. Mr. Ten Broeck apparently desired to encourage the education of his neighbors' children, for he had none of his own. In 1862 (Laws of 1862, chap. 353) he applied to the Legislature of the State of New York and obtained permission for the creation of a body corporate known as " The Trustees of the Ten Broeck Free Academy," which was authorized to receive real and personal property for the purpose of establishing and maintaining a free academy for the education of pupils from the towns of Farmersville, Machias and Franklinville. This act authorized Mr. Ten Broeck to devise and bequeath to the academy real and personal property, the yearly income from which should not exceed $10,000, in addition to certain real estate upon which the academy was erected. On April 25, 1863, Mr. Ten Broeck made a will by which he bequeathed to the academy the sum of $100,000, directing that of this amount between $10,000 and $15,000 be expended for the erection of an academy building and

for the purchase of a library and equipment. The will became effective by the death of the testator in the year 1863.

Thereafter, a series of amendatory acts was passed by the Legislature, providing for various changes affecting the composition, obligations and structure of the board of trustees, etc., but for the most part not materially affecting the purposes for which the academy was created, which were in essence as follows: To organize, conduct and maintain a free academy " for the instruction of youth in the village of Franklinville in the said county of Cattaraugus, to be known as the ' Ten Broeck Free Academy.' " Two such amendments were enacted in 1868 (Laws of 1868, chaps. 162, 517), one in 1879 (Laws of 1879, chap. 141), one in 1904 (Laws of 1904, chap. 239), one in 1920 (Laws of 1920, chap. 337), two in 1923 (Laws of 1923, chaps. 653, 655), one in 1924 (Laws of 1924, chap. 39), one in 1935 (Laws of 1935, chap. 448), and one in 1937 (Laws of 1937, chap. 176).

After Mr. Ten Broeck's death the corporation received the fund, purchased a site and built a school building. In 1904 the State of New York provided for free high school education. In the same year the Legislature amended again the original statute creating the Ten Broeck Academy, as hereinafter pointed out.

The amendment of 1904, therefore, deserves special mention, as do those of 1923. The first of these authorized and empowered the trustees of the academy to lease it, its equipment and grounds, to union free school district No. 1 of the town of Franklinville, one of the respondents herein, whenever said district shall be formed with a board of education. This act of 1904 laid down certain provisions which the lease was to contain, among them one to the general effect that all academic students from the town of Franklinville outside of the union free school district and also those from the towns of Farmersville and Machias were to have the same rights and privileges " that they now have under the provisions of " the act of 1862. The name " Ten Broeck Free Academy " was to be retained and the school board was to make certain improvements and repairs. The academy trustees were continued in office but were to pay over to the board of education " during the continuance of said lease " the income received from the " endowment fund " in each year.

The lease has been entered into for a term of 999 years at one dollar per year and the income of the fund has been paid over to the school district board of education.

By one act of 1923 (chap. 655) the academy trustees were authorized and empowered to transfer to union free school district No. 1 " all the property, funds, lands, buildings, equipment and

appurtenances " of the academy, under certain named conditions. Among these is one to the general effect that the students named in the act of 1904 " receive instruction in the academic department of such school without the payment of any excess tuition therefor." The details of the manner of effecting the transfer are set out in the act.

By the other act of 1923 (chap. 653) certain changes were made regarding the composition of the trustees of the academy.

It is the claim of the petitioners that after the enactment of the various amendments to the original act, all the property of the academy was transferred to the school district and that the corporation created to carry out the wishes of the testator exists in name only; that the purposes of the original creation have failed.

The respondents contend that the court is without jurisdiction in the matter. The Attorney-General appears specially and contends, with the other respondents who appear, that the petition should be dismissed on the ground that the petitioners are not the proper parties to bring this proceeding. In support of their contention, the respondents cite subdivisions 2 and 3 of section 12 of the Personal Property Law and similar provisions of section 113 of the Real Property Law. These statutes have to do with " gifts and bequests of personal property for charitable purposes " and bring into our law (if ever it was without), by statutory enactment, the *cy pres* power. They comprise the so-called Tilden Acts.

It may be assumed, at least for the purposes of this particular stage of this proceeding, that Mr. Ten Broeck's bequest and its proceeds were for " charitable purposes." (*Sherman* v. *Richmond Hose Co.*, 230 N. Y. 462; *Trustees of Sailors' Snug Harbor* v. *Carmody*, 158 App. Div. 738; affd., 211 N. Y. 286.) The opinion of the Court of Appeals in the *Richmond Hose* case by ANDREWS, J. (at p. 468), clearly indicates, if citation of authority is needed, that a bequest for such purposes as Mr. Ten Broeck intended falls within the definition of a " charitable purpose." The statute is to the same effect.

But, argue the respondents, these petitioners are not proper parties for at least two reasons: (1) Because the petitioner is an educational corporation with limited powers, among which is not to be found the power to bring this proceeding, and (2) because the cited sections of the Personal Property Law and Real Property Law limit to certain specified persons those who may bring proceedings relative to charitable trusts. These are claimed to be the following: (A) The trustee; (B) the Attorney-General, and (C) the court itself.

Because of the disposition about to be made of this proceeding, it is not necessary to pass on respondents' first contention.

I have come to the conclusion that the second contention of the respondents must be sustained.

It is clear that the trustee and the Attorney-General have a right to institute action. The statutes clearly state it and our courts have consistently reiterated it. (*Trustees of Sailors' Snug Harbor* v. *Carmody, supra.*) And, by the same token, the court continues to have its inherent jurisdiction over these " trusts." As was said by HOTCHKISS, J., for the Appellate Division in *Trustees of Sailors' Snug Harbor* v. *Carmody* (*supra,* 754): " The Tilden Act is cumulative and supplementary to the inherent jurisdiction of the court, affording an additional and concurrent source of jurisdiction in proper cases." Again (at p. 756), that court said, " The uncertain beneficiaries of the trust * * * have no standing in court for any purpose."

There are additional considerations of great practical weight which favor this view. Numerous charitable trusts have as the objects of their bounty people without number, known and unknown, actual and potential. To give each one of these beneficiaries, real and fancied, the right to bring action on the trust or bequest or gift which gives birth to their status as beneficiaries, would create a situation the evil of which would far outweigh the good, if any.

The petition is, therefore dismissed, without costs.

There remains, however, an important question to be decided under the inherent power of the court over such matters, as well as under the additional express statutory authorization. Under subdivision 2 of section 12 of the Personal Property Law and section 113 of the Real Property Law " the Supreme Court shall have control over gifts, grants and bequests " for educational purposes. The power is clear, unmistakable and beyond question. The court has, and the Attorney-General in his brief concedes that it has, the power to initiate a proceeding on its own motion. The respondents argue, however, that for the court so to do herein would be to allow these petitioners to accomplish their aim by indirection. With this argument, the court cannot agree.

To the court is committed the control over such matters as the subject of this proceeding. This court now knows of the situation of the Ten Broeck Academy. How the knowledge has come to the court seems entirely irrelevant. The court is no peripatetic Sherlock Holmes, roaming over the countryside for the purpose of examining all and sundry under its legal magnifying glass. But there comes to the notice of the court evidence of a situation which

*may* need its intervention. Let it be supposed that (in some other case) neither the beneficiary, the custodian of the fund, nor the Attorney-General wishes to initiate a proceeding — although the court through other avenues of information is convinced that the spotlight of investigation must, in the public interest, be focussed on the situation. Can it be successfully argued that the court would be powerless to act because it would be " subterfuge " for it to act on the sworn information it obtained in another proceeding? Surely to state the contention is to defeat it. Certainly the court cannot be expected to divine by psychic phenomena the need for a particular investigation. Someone usually has to supply the information; and here, in the case before us, it has been supplied in *prima facie* form at least. In this statement there is absolutely no imputation of wrongdoing, no hint of impropriety, no indication of misconduct.

Sufficient factual detail in so long standing a situation cannot be adduced on this kind of motion. It may or may not develop that a case is presented for the application of the *cy pres* rule. It may or may not be that universal free education in this State has created a need for a reappraisal of the gift of Peter Ten Broeck. More facts are needed to guide the court to a practical and intelligent, as well as a legally sound determination.

The Attorney-General is mandated by the statute to " represent the beneficiaries in all such cases and   *   *   *   to enforce such trusts by proper proceedings in the courts." (Pers. Prop. Law, § 12, subd. 3.) The court may, " *   *   * upon such notice as the court shall direct, make an order directing that   *   *   *" (Pers. Prop. Law, § 12, subd. 2) the gift, etc., may be expended otherwise than the original direction so as to accomplish " most effectually " its general purpose.

The court is convinced, from the information in its possession, that it is in duty bound to make further inquiry, on its own motion, into the facts before it can be ascertained whether a determination on the merits is in order. It is apparent that in the communities involved serious doubts are entertained regarding the status of the fund and the communities' relation to it. It is important that the matter be set at rest once and for all for the good of all concerned. The education of the future citizens of these communities is involved, as well as the future of a fund. Nothing can be of greater public moment.

An order may, therefore, be submitted directing the Attorney-General, on the court's own motion, to commence an appropriate proceeding directed toward obtaining a comprehensive survey of the Ten Broeck Free Academy corporation, since its inception; of the

past administration and present status of its assets and liabilities and of the manner of its carrying out the purposes of its creation; and directed further toward ascertaining whether circumstances have so changed since the creation of the fund and the academy corporation as to render impossible or impracticable a literal compliance with the terms of the instrument creating the fund.

Let all parties who have appeared herein appear before me at a Special Term of this court to be held by me at Erie County Hall, Buffalo, N. Y., on the 2d day of October, 1941, at two o'clock P. M. for the purpose of agreeing, if possible, on the provisions of the order herein directed to be submitted. Failing in such agreement, the court will then hear further argument, if any.

(Supplemental opinion, October 2, 1941.)

All the original parties to this proceeding having appeared before me on this 2d day of October, 1941, pursuant to the direction in the original opinion, the following agreement was arrived at among all the parties as to the provisions of the further order of the court:

At the suggestion of the trustees of Ten Broeck Free Academy, the trustees will commence a proceeding on their own motion by petition to be submitted on October 17, 1941. The order presented on said petition will authorize the instituting of a proceeding, the scope of which will be as set forth in the original opinion. In addition, the order will provide that the Attorney-General be cited; that the entire matter be referred to an official referee who will hear all interested persons and give them an opportunity to present evidence, in his discretion. The referee will conduct such hearings and at such times and places as he, in his discretion, may deem fit. The trustees shall cause to be published, ten days in advance of the first hearing, notice thereof in the *Chronicle Journal*, a newspaper published in the village of Franklinville.

The order shall further provide that the first hearing by the referee shall take place within thirty days from the granting of the order unless the referee shall otherwise order.

As set forth in the original opinion, it is again to be underscored that the intention of the court is to obtain a determination of this matter in as thorough-going and speedy manner as possible. The Attorney-General will undoubtedly see to it that in the interests of all concerned, all relevant testimony will be presented at the hearings to be held.

Submit order.