OPINION OF THE COURT
Chief Judge Cooke.
At issue here is whether the State Attorney-General has standing to sue a corporation for a breach of fiduciary duties and for declaration and payment of dividends, on behalf of the ultimate beneficiaries of a charitable organization which received shares in the corporation as an absolute gift. In these particular circumstances, it must be concluded that the Attorney-General lacks standing.
This action was commenced by the Attorney-General against United Industrial Syndicate, Inc., and its directors. In 1968 and 1969 defendant Lebensfeld, one of the directors, donated shares of United’s cumulative first preferred stock to a variety of charities, without placing any restrictions on the use of the gifts. Under United’s certificate of incorporation, holders of such shares are “entitled to receive, but only when and as declared by the Board of Directors out of any funds legally available for the purpose, cash dividends at the rate of $6.00 per share per annum, and no more”. The dividends were to accumulate “whether or not earned” and thus were to be paid or declared in full before any dividend or distribution was made to inferior shares. Since the time when the gifts of stock were made, dividends have been declared but in an amount less than $6 per share.
Several of the charity donees in 1977 brought an action against United and its directors seeking the difference between the dividends actually declared and the $6 per share per annum mentioned in the certificate of incorporation, as well as a declaration that the corporation must pay the full $6 figure in future years. The remaining charities failed to join in the suit or to commence one of their own. After approximately one year passed, the Attorney-General insti *445 tuted this action, claiming to represent the unascertained beneficiaries of the charities which did not sue. The complaint asserts a cause of action for the alleged underpayment in dividends, and also asserts a cause of action involving another group of charities from which United repurchased first preferred shares in 1975. According to the complaint, the repurchase by United was at less than market value and constituted a breach of fiduciary duties to minority shareholders.
Defendants moved to dismiss the complaint on the ground that the Attorney-General lacked capacity to sue, and upon the further ground that the complaint failed to state a cause of action. Special Term ruled that the lawsuit was derivative in nature and could not be maintained in the absence of a prior demand on the charities. Since the Attorney-General had failed to make a demand, the court dismissed the action, except as to one charity concerning which a demand was deemed futile. The Appellate Division, with a partial dissent, modified to the extent of dismissing the entire action on the ground of lack of standing. On this appeal, the Attorney-General continues to assert that he has standing to represent the ultimate beneficiaries of the charities. The order of the Appellate Division should be affirmed.
Pursuant to EPTL 8-1.1 (subd [f]), the Attorney-General is authorized to represent the beneficiaries of “dispositions for religious, charitable, educational or benevolent purposes and it shall be his duty to enforce the rights of such beneficiaries by appropriate proceedings in the courts.” Originally enacted as part of the “Tilden Act” in 1893, this statutory provision was part of an over-all legislative scheme designed to validate charitable trusts (L 1893, ch 701). For a period prior to the Tilden Act, charitable trusts were deemed invalid in this State (Tilden v Green, 130 NY 29; see Bascom v Albertson, 34 NY 584; Levy v Levy, 33 NY 97; see, generally, Scott, Charitable Trusts in New York, 26 NYU L Rev 251). During that period, the sole method by which a charitable object could be carried out was by making an absolute gift to a charitable corporation (see, e.g., Bird v Merklee, 144 NY 544, 549-552; 9B Rohan, *446 NY Civ Frac [EPTL], par 8-1.1 [1], at p 8-12).[1]
One of the principal reasons a charitable trust could not Jbe enforced was because it lacked “ ‘a certain beneficiary who can claim its enforcement’ ” and “a certain designated beneficiary [was] essential to the creation of a valid trust” (Tilden v Green, 130 NY 29, 45, supra). Thus, when it validated charitable trusts, the Legislature enacted the predecessor to EPTL 8-1.1 (subd [f]), designating the Attorney-General to represent the uncertain beneficiaries and empowering him “to enforce such trusts by proper proceedings in the court” (L 1893, ch 701, §2). The obvious purpose of this provision was to provide a mechanism for enforcement of trusts whose beneficiaries were unascertainable.
With the enactment of EPTL 8-1.1 (subd [f]), the Attorney-General’s enforcement powers were expressly extended to all charitable dispositions, which include absolute gifts.[2] No actual substantive change was effected, however, since case law had recognized the Attorney-General’s power to ensure that charities used absolute gifts in accordance with the purposes stated by the donee (e.g., St. Joseph’s Hosp. v Bennett, 281 NY 115, 119), or where no purposes are stated, in accordance with a legitimate purpose of the charitable corporation (e.g., Sherman v Richmond Hose Co. No. 2, 230 NY 462, 469). If the Attorney-General were suing to obtain actual enforcement of a disposition, or to require that it be applied for a stated or proper charitable purpose, there would thus be little question of his standing.
*447 The problem here, however, is that the Attorney-General does not seek to attain any of these goals. Rather, he is attempting to enforce obligations purportedly owing to charitable organizations by virtue of their ownership of stock. In effect, the Attorney-General is stepping into the shoes of the charity without first making a demand upon the corporation or satisfying the other procedures normally associated with a derivative action. He is endeavoring, not to enforce a gift or a trust, but to enforce rights that arise from the ownership of charitable property originally received as a gift.
No authority has been furnished to this court that would sanction such an expansive reading of EPTL 8-1.1 (subd [f ]). That provision was enacted in response to a particular problem and, although now broader than at its inception, it does not authorize a large scale incursion into the everyday affairs of charitable corporations. Indeed, in these circumstances, to confer standing upon the Attorney-General under EPTL 8-1.1 (subd [f]) would be to grant all but unlimited and uncontrolled power to act as the alter ego of the charitable organization. Since most charitable holdings probably originated as gifts, as did the shares involved here, virtually all obligations owed a charity would be independently enforceable by the Attorney-General. Such a result would require a strained interpretation of EPTL 8-1.1 (subd [f]), a statute designed primarily to ensure that there is a party available to enforce charitable trusts on behalf of the ultimate beneficiaries.
Nor does EPTL 8-1.4 (subd [m]) authorize the Attorney-General to maintain this action. It is true that 8-1.4 grants supervisory power over charities and other entities and allows the Attorney-General to institute proceedings to secure proper administration of such entities. Quite simply, however, the section does not provide for an action against third parties who allegedly are liable to the charitable organization.
Finally, the Attorney-GeneraPs belated attempt to invoke various provisions of the Not-For-Profit Corporation Law must be rejected. The action was commenced solely on the theory that the Attorney-General represented the ultimate *448 beneficiaries under the EPTL. The Attorney-General may not, on appeal, advance a different theory and rely on additional statutory authority, especially here where the record could have been further developed had the contentions been raised at Special Term. Hence, we do not decide whether and in what instances the Attorney-General possesses standing under the Not-For-Profit Corporation Law.
Accordingly, the order of the Appellate Division should be affirmed, with costs.
Judges Jasen, Gabrielli, Jones, Wachtler, Fuchsberg and Meyer concur.
Order affirmed, with costs.

. In England, charitable uses were expressly recognized in 1601 with the passage of the Statute of Charitable Uses (43 Eliz I, ch 4), although such uses had been regularly enforced in Chancery prior to that time (Vidal v Girad’s Executors, 2 How [43 US] 127, 196). The New York Legislature repudiated the Statute of Charitable Uses in 1788 (L 1788, ch 46). Nonetheless, in Williams v Williams (8 NY 525), the court held that charitable trusts did not depend for their existence on the Statute of Charitable Uses, but rather had an independent existence at common law. Not long after, however, the Williams reasoning was criticized and, ultimately repudiated (Levy v Levy, 33 NY 97, supra; Tilden v Green, 130 NY 29, supra).

. Under the EPTL, a disposition is defined as “a transfer of property by a person during his lifetime or by will” (EPTL 1-2.4). This definition is broad enough to encompass, at a minimum, both trusts and absolute gifts (see Hoffman, Practice Commentary, McKinney’s Cons Laws of NY, Book 17B, EPTL 1-2.4, p 11).