64 N.Y.2d 458 (1985)
Alco Gravure, Inc., et al., Appellants,
v.
The Knapp Foundation, Respondent.
Court of Appeals of the State of New York.
Argued January 10, 1985.
Decided March 28, 1985.
Joseph Calderon and Robert C. Harris for appellants.
John S. Siffert for respondent.
Chief Judge WACHTLER and Judges SIMONS and KAYE concur with Judge MEYER; Judge JASEN dissents and votes to order reargument in a separate opinion; Judge ALEXANDER taking no part.
*462 MEYER, J.
Because the Not-For-Profit Corporation Law (N-PCL) provisions governing a Type B corporation[1] expressly incorporate a quasi-cy pres principle with respect to both the administration and use of its assets (§ 513 [b]; § 522) and the transfer of its assets on dissolution (§ 1005 [a] [3] [A]; § 1008 [a] [15]), section 804 of that law, which permits amendment of the certificate of incorporation of such a corporation, cannot be construed to authorize an amendment inconsistent with the purposes for which funds were given to the corporation without compliance with such quasi-cy pres principles. The order of the Appellate Division should, therefore, be modified and, as so modified, should be affirmed, with costs to plaintiffs.

I
The Knapp Foundation is a nonprofit corporation established in 1923 by act of the Legislature (L 1923, ch 21, as amended by L 1927, ch 607). The Foundation was organized "for the purpose of receiving and maintaining a fund or funds, administering the same and applying the principal and income thereof, and either of them, to render aid and assistance to promote the social, physical or economic welfare and efficiency of such persons as have been, or at any time in the future shall be, employed in any printing, publishing or lithographing corporation of which Joseph P. Knapp has been or shall hereafter be a stockholder, director or officer, or in any corporation which shall be a successor corporation thereto * * * and to render aid and assistance to *463 the families of the persons so employed by such agencies and means as from time to time shall be found appropriate therefor" (id., § 1). The corporation was granted the power to take and hold real or personal property and to invest and reinvest the principal and income thereof and to "deal with and expend the principal and income of the corporation in such manner as in the judgment of the trustees will best promote its objects" (id., § 2). In 1927, the 1923 act was amended to insert a new section 1-a, providing that any unused income not required for the corporation's stated purposes may be used to be helpful to others in whatever ways seem wise to the trustees. As authorized by N-PCL 103 and 113, on or about August 22, 1973, the Foundation filed a certificate of type designating it as a Type B corporation, the effect of which is to make the N-PCL applicable in all respects to the Foundation (103 [a]; 113 [d]).
The Foundation's primary purpose was thus to assist employees of the founder's corporations and their families. Applications by such persons were decided upon by the trustees in their absolute discretion and, when approved, usually took the form of a loan. In recent years, however, the number of such applications has declined; only one such request has been made since 1978. As a consequence, the Foundation has utilized its income, as authorized by section 1-a of its charter, to benefit a broader class of charitable purposes, making contributions to numerous charities and nonprofit organizations. Because of its employee-oriented primary purpose, however, the Foundation's income is not exempt from Federal tax.
In light of the absence of individual applications and its continued liability for Federal income tax, the Foundation's trustees resolved that the original intent of the founder would best be served by the dissolution of the Foundation and the transfer of its assets to The Knapp Foundation (North Carolina), founded by Joseph Knapp in 1929, which is tax exempt and the trustees of which are the same persons as govern defendant Foundation. The North Carolina Foundation makes contributions to recognized tax-exempt organizations qualified to receive such contributions but does not provide assistance to individuals. On January 10, 1983, the New York Foundation executed a certificate of amendment of its certificate of incorporation authorizing the trustees "in their absolute discretion" to apply principal and income of the Foundation to any other charitable organization founded by Joseph P. Knapp, including the North Carolina Foundation. The Attorney-General noted no objection to the amendment, and on February 2, 1983 it was approved by a Supreme Court Justice, who consented that it be filed.
*464 The present action was begun in March 1983. Plaintiffs are a corporation claiming to be a "successor corporation" within the meaning of the 1923 act, whose employees are intended beneficiaries of the Foundation, as well as two individual employees of the corporate plaintiff. In their first cause of action, they seek a declaration that employees of the corporate plaintiff are beneficiaries of the New York Foundation and an accounting by the trustees; in the second, they ask that the 1983 certificate of amendment be declared invalid and that the Foundation be enjoined from transferring its assets and from dissolving its corporate existence.
Plaintiffs moved for a preliminary injunction against the proposed transfer of assets and for summary judgment on each of their claims. Defendant cross-moved to dismiss the complaint and for summary judgment. Special Term dismissed the complaint as to the corporate plaintiff on the ground that the dismissal for lack of standing of its prior New Jersey action against the Foundation for the same relief barred maintenance of the instant action[2] and, as against the individual plaintiffs, granted defendant's motion for summary judgment, concluding that amendment of the certificate of incorporation and dissolution of the Foundation were within the discretionary authority of the trustees.[3] The Appellate Division affirmed, without opinion. We conclude (1) that the New Jersey dismissal is not res judicata and that both the corporate and the individual plaintiffs have standing to maintain the action and (2) that the amendment of the certificate of incorporation without passing upon quasi-cy pres considerations as required by the Not-For-Profit Corporation Law was improper. We, therefore, modify the Appellate Division's order of affirmance to deny both defendant's motion to dismiss and its motion for summary judgment, but because the courts below did not pass on the status of plaintiff as "a successor corporation" under the 1923 act and its status as such is disputed in the papers before us, we are in accord with the Appellate Division's affirmance of the remaining provisions of Special Term's order.

*465 II
The res judicata argument stems from the New Jersey action brought by the corporation alone against defendant Foundation. That action was dismissed by New Jersey's Superior Court for lack of standing and the dismissal was affirmed by the Appellate Division of that court. That ruling should not be accorded res judicata effect, however, because a dismissal for lack of standing as applied by New Jersey courts is not a dismissal on the merits (Restatement [Second] of Judgments § 20 [2]; 5 Weinstein-Korn-Miller, NY Civ Prac ¶ 5011.11, at 50-87; 50 CJS, Judgments, §§ 627, 633 [d]; 46 Am Jur 2d, Judgments, §§ 479, 508), any more than would be a dismissal for prematurity (Moloney v Nelson, 158 N.Y. 351; Converse v Sickles, 146 N.Y. 200). In any event, the prior action involved only the application of New Jersey's policy in relation to standing, not whether as a matter of New York law and policy the corporation had standing.
As a matter of New York law, both the individual and the corporate plaintiffs have standing to maintain the action. As to the individual plaintiffs, no case squarely in point has been found but on analogy to trust law they should be accorded standing. The general rule is that one who is merely a possible beneficiary of a charitable trust, or a member of a class of possible beneficiaries, is not entitled to sue for enforcement of the trust (Lefkowitz v Lebensfeld, 68 AD2d 488, 495, affd 51 N.Y.2d 442; Matter of James, 22 Misc 2d 1062, 1067-1068; Revici v Conference of Jewish Material Claims Against Germany, 11 Misc 2d 354, 357; Matter of Herman [Ten Broeck Free Academy], 177 Misc 276, 280-281; Bogert, The Law of Trusts and Trustees § 414, at 436 [2d rev ed]). Instead, the Attorney-General has the statutory power and duty to represent the beneficiaries of any disposition for charitable purposes (EPTL 8-1.1 [f]; 8-1.4; see, Lefkowitz v Lebensfeld, 51 N.Y.2d 442, supra; Trustees of Sailors' Snug Harbor v Carmody, 211 N.Y. 286, 300).
There is an exception to the general rule, however, when a particular group of people has a special interest in funds held for a charitable purpose, as when they are entitled to a preference in the distribution of such funds and the class of potential beneficiaries is sharply defined and limited in number (see, Restatement [Second] of Trusts § 391 comment c; 4 Scott, The Law of Trusts § 391, at 3008-3009 [3d ed]; Bogert, The Law of Trusts and Trustees § 414 [2d rev ed]). In the present case there is a class of beneficiaries which is both well defined and entitled to a preference in the distribution of defendant's funds prior to *466 the disputed amendment, viz., the employees of corporations in which Joseph P. Knapp was involved and the employees of successors to such corporations.
Furthermore, the policy reasons for limiting standing in this area are not applicable in this case. Normally, standing to challenge actions by the trustees of a charitable trust or corporation is limited to the Attorney-General in order to prevent vexatious litigation and suits by irresponsible parties who do not have a tangible stake in the matter and have not conducted appropriate investigations (Bogert, The Law of Trusts and Trustees § 414, at 436, supra). However, the present action concerns not the ongoing administration of a charitable corporation, but the dissolution of that corporation and the complete elimination of the individual plaintiffs' status as preferred beneficiaries of the funds originally donated by Joseph Knapp. The individual plaintiffs, therefore, have standing.
There is authority for according standing to the corporate plaintiff as well (see, Walton v Collins, 38 App Div 624, affd 167 N.Y. 538; cf. Matter of Jones, 191 Misc 617, 619) and doing so appears consistent with the views on standing expressed in cases such as Matter of Douglaston Civic Assn. v Galvin (36 N.Y.2d 1) and Matter of National Org. for Women v State Div. of Human Rights (34 N.Y.2d 416). In view of the direction for notice to the Attorney-General in N-PCL 522 (b) (see also, EPTL 8-1.1 [f]) and on analogy to general trust law relating to enforcement of a charitable trust (Restatement [Second] of Trusts § 391, at 280; Bogert, The Law of Trusts and Trustees § 414, at 436, supra; 4 Scott, The Law of Trusts § 391, at 3009, supra), notice should, however, be given to the Attorney-General before the matter proceeds further.[4]

III
Defendant's argument on the merits, accepted by the courts below, is that the amendment to the Foundation's charter not having been objected to by the Attorney-General and having been approved by a Supreme Court Justice pursuant to N-PCL 804, that ends the matter. While a corporation created by special act of the Legislature is authorized to amend its charter in the manner provided by N-PCL article 8, and the article does not differentiate between the various types of not-for-profit corporations with respect to the procedure for amendment, the law must *467 be read so as to harmonize its various provisions (McKinney's Cons Laws of NY, Book 1, Statutes §§ 97, 98). So to read the law does not give the directors the unlimited power of amendment for which defendant argues, for the powers of the directors of a Type B corporation, both as to how its assets are administered and as to its dissolution, and the power of a Supreme Court Justice when approving the certificate of dissolution of a Type B corporation, are expressly limited by quasi-cy pres considerations under provisions of articles 5 and 10 of the N-PCL.
Thus, section 513 (a) provides that a Type B corporation "shall not be deemed a trustee of an express trust" of assets "given * * * or otherwise vested in such corporation in trust for, or with a direction to apply the same to, any purpose specified in its certificate of incorporation,"[5] but subdivision (b) of the same section imposes its own limitation upon the directors, requiring that: "Except as may be otherwise permitted under article eight of the estates, powers and trusts law or section 522 (Release of restrictions on use or investment), the governing board shall apply all assets thus received to the purposes specified in the gift instrument and to the payment of the reasonable and proper expenses of administration of such assets." EPTL article 8 authorizes the Supreme Court or, as to a disposition by will, the Surrogate's Court, to direct how charitable funds shall be administered when the purpose for which originally given or bequeathed becomes "impracticable or impossible" (EPTL 8-1.1 [c], [d]),[6] and N-PCL 522 (which is a modified version of the Uniform Management of Institutional Funds Act, see, 1978 McKinney's Session Laws of NY, at 1774) incorporates similar provisions in that law. Subdivisions (b), (c) and (d) of the latter section provide, so far as pertinent, that:
"(b) If written consent of the donor cannot be obtained by reason of his death, disability, unavailability, or impossibility of identification, the governing board may apply in the name of the corporation (i) to the supreme court of the judicial district wherein the corporation has its office or principal place of carrying out the purposes for which is was formed, or (ii) where the applicable gift instrument is a will, to the surrogate's court in which such will is probated, for release of a restriction *468 imposed by the applicable gift instrument on the use or investment of an institutional fund. The attorney general shall be notified of the application and shall be given an opportunity to be heard. If the court finds that the restriction is obsolete, inappropriate, or impracticable, it may by order release the restriction in whole or in part * * *
"(c) A release under this section may not allow a fund to be used for purposes other than the purposes of the corporation.
"(d) This section does not limit the application of the doctrine of cy-pres."[7]
There can be no question, therefore, that the transfer of principal from the defendant Foundation to The Knapp Foundation (North Carolina), as authorized by the amended certificate of incorporation, required more than the pro forma approval of the amendment that was obtained. To permit the corporation by a charter amendment such as here adopted to change the purpose for which funds given to it are required to be held would shortcircuit completely the limitations imposed by sections 513 and 522 and permit the Foundation trustees to exercise a power given specifically and only to a Supreme Court Justice as concerns property received by the corporation by inter vivos gift.
Similar limitations are imposed with respect to the dissolution of a Type B corporation. N-PCL 1001 authorizes the board of a not-for-profit corporation to adopt a plan of dissolution, but *469 section 1002 (d) requires that as to a Type B corporation the plan be approved by a Justice of the Supreme Court on verified petition and on notice to the Attorney-General; section 1005 (a) (3) (A) mandates that the assets of a dissolved Type B corporation "be distributed to one or more domestic or foreign corporations or other organizations engaged in activities substantially similar to those of the dissolved corporation pursuant to a plan of distribution adopted * * * as ordered by the court to which such plan is submitted for approval under section 1002" and that "such disposition [to the acquiring corporation] shall be devoted by the acquiring corporation or organization to the purposes intended by the testator, donor or grantor";[8] and section 1008 (a) (15) authorizes the Supreme Court to "suspend or annul the dissolution * * * and * * * make all such orders as it may deem proper in all matters in connection with the dissolution" of a Type B corporation where the distribution of its assets is to be made to a corporation "engaged in activities substantially similar to those of the dissolved corporation". Clearly, therefore, the simple process of amending the corporate charter as provided in N-PCL article 8 is legally insufficient to authorize either the transfer of assets or the distribution on dissolution that has here been attempted (cf. N-PCL 804 [d]).
Although, as noted above, there is pending a separate proceeding by the corporation seeking approval of its dissolution, the demand for relief in plaintiffs' complaint in the present action expressly asked that dissolution of the Foundation be enjoined. Furthermore, the amendment of the Foundation's certificate of incorporation was only the initial step in carrying out the resolution of its trustees, adopted some time prior to October 19, 1982, which recited the judgment of the trustees that the Foundation had "substantially accomplished the purposes set forth by *470 its Founder" and that his original intent "would best be served by * * * dissolution of The Knapp Foundation and the transfer of its assets to The Knapp Foundation, Inc. (N.C.) * * * for the purpose of furthering the good works of that organization" and authorized the legal representatives of the Foundation "to institute proceedings with the Attorney General of the State of New York for the dissolution of The Knapp Foundation and the transfer of its remaining assets * * * to The Knapp Foundation, Inc. (N.C.) to be used for such purposes as the Board of Trustees of that organization may deem proper". That the amendment of the certificate of incorporation was but a step "in carrying out the aforesaid Resolution" is attested by the affidavit of William Horton, New Jersey counsel for the Foundation and thus one of the legal representatives so authorized. It is borne out also by the resolution of the trustees adopted March 8, 1983, adopting a plan of dissolution. It is these actions of the trustees which Special Term held to be decisions "made within the discretionary authority granted to the Trustees by law."
It is, thus, apparent that the amendment of the certificate of incorporation approved February 2, 1983, the transfer of the bulk ($700,000) of the Foundation's assets to the North Carolina Foundation, leaving it with but $211,000, and the decision in the present case have all been arrived at without consideration of the quasi-cy pres limitations incorporated in the N-PCL sections discussed above. It is still possible, of course, for the court in the dissolution proceeding to consider whether the North Carolina Foundation is "engaged in activities substantially similar to those of" defendant Foundation. But the issue before us is the propriety of granting defendant summary judgment dismissing the complaint in the present action. As to that we conclude that an amendment of the charter of a Type B corporation which changes the purpose to which funds received by it for a limited purpose may be applied is not within the discretionary authority of the trustees alone; rather, such a change must be reviewed by a Justice of the Supreme Court under the quasi-cy pres provisions discussed above before such an amendment can be approved.[9] Defendant's motion for summary judgment should, therefore, have been denied.
*471 We do not reach or decide whether, upon such review, the amendment sought to be made by the trustees should be approved, that question being one which normally involves a large measure of discretion (City Bank Farmers Trust Co. v Arnold, 283 N.Y. 184, 195; Sherman v Richmond Hose Co., 230 N.Y. 462, 473; Matter of Richmond County Socy. For Prevention of Cruelty to Children, 11 AD2d 236, 239, affd 9 N.Y.2d 913, appeal dismissed and cert denied 368 US 290).
For the foregoing reasons the order of the Appellate Division should be modified as above set forth and, as so modified, affirmed, with costs to plaintiffs.
JASEN, J. (dissenting).
The theory advanced by the majority, that a not-for-profit corporation lacks authority to amend its corporate charter to change its corporate purpose, eviscerates the policy of the Not-For-Profit Corporation Law according charitable organizations broad latitude in corporate self-governance.
The facts are not substantially in dispute. Joseph Palmer Knapp established The Knapp Foundation (Foundation) in 1923 by act of the Legislature (L 1923, ch 21) as a membership corporation to provide assistance, in its trustees' absolute discretion, to employees of companies owned or controlled by Mr. Knapp. The Foundation's corporate charter was amended in 1927 by act of the Legislature (L 1927, ch 607), and again in 1983. During the years subsequent to its establishment, the number and amounts of loans sought from the Foundation declined as public assistance became more readily available. Since 1978, only one request for assistance was submitted by an individual to the Foundation, and the request was denied.
Pursuant to Not-For-Profit Corporation Law (N-PCL) article 8, on January 10, 1983, the Foundation executed a certificate of amendment of the certificate of incorporation of The Knapp *472 Foundation, which added the following sentence to the corporate charter: "Notwithstanding the foregoing provisions of this Section 1, the trustees, in their absolute discretion, are authorized and empowered to apply the principal and income of The Knapp Foundation, including any part or all of said principal and income, to any other charitable organization founded by or in the memory of Joseph Palmer Knapp, including without limiting the generality of the foregoing, The Knapp Foundation, Inc., a North Carolina corporation, and an exempt organization described in Section 501 (c) (3) of the Internal Revenue Code of 1954, as amended."
On January 24, 1983, the Attorney-General noted no objection to the granting of judicial approval of the amendment, and waived required statutory notice. On February 2, 1983, Honorable Donald J. Sullivan, a Justice of Supreme Court, approved the amendment and consented that it be filed. Relying upon the authority granted the trustees of the Foundation by the amendment of the certificate of incorporation, as approved by a Justice of the Supreme Court, on February 28, 1983, the trustees transferred $700,000 of its total assets of $946,687 to Knapp, N.C., a North Carolina charitable corporation founded by Mr. Knapp.
Thereafter, plaintiffs, two employees of a successor corporation of a Knapp corporation and said successor corporation, instituted this action by an order to show cause dated March 9, 1983, in which they moved for an order enjoining the transfer of assets by the Foundation during the pendency of the action. Supreme Court, New York County, dismissed the complaint, and the Appellate Division, First Department, unanimously affirmed, without opinion.
At the outset, it is important to consider the background of the N-PCL in New York. The N-PCL in general, and article 8 in particular, were intended to resemble corresponding provisions under the Business Corporation Law (see, Explanatory Memoranda preceding the N-PCL, McKinney's Cons Laws of NY, Book 37, p XX). Indeed, the N-PCL was designed to parallel the New York Business Corporation Law "as closely as the subject matter permitted". (Henn, Statutory Trends in the Law of Nonprofit Organizations: California, Here We Come!, 66 Cornell L Rev 1103, 1114.) The N-PCL, like the Business Corporation Law, manifests an emphasis upon "enabling", rather than "regulating" corporate affairs. (See, Fuld, New York's New Business Corporation Law, 19 NYCLA B Bull 52.) As will be demonstrated, the majority's approach fosters a paternalistic approach toward not-for-profit corporations which is wholly incongruous *473 with clear statutory authority dictating broad latitude in corporate self-governance.
To discern the scope of a not-for-profit corporation's power to amend its charter under N-PCL article 8, it is necessary to review the power of a charitable corporation to amend its charter under the Membership Corporations Law (repealed L 1969, ch 1066, eff 1970) upon which the N-PCL is based. The Membership Corporations Law provided that a membership corporation created under or by a general or special law may "extend, limit or otherwise change its purposes and powers or other provisions of its certificate or act of incorporation" provided "that no corporation organized by or under special law shall change the general character of its business as authorized by such special law" (Membership Corporations Law § 30 [A]; § 30 [7] [c]). Thus, pursuant to the law which formerly governed such charitable corporations as The Knapp Foundation, the power of a membership corporation was strictly limited so as to bar an amendment of the legislative charter which would change the corporate purpose or general corporate character. This limitation upon the power of a charitable organization, however, was deleted from the N-PCL.
Not-For-Profit Corporation Law § 801 (b) (2) specifically provides that any corporation may, "without limitation * * * enlarge, limit or otherwise change its corporate purposes" (emphasis added). The N-PCL explicitly extends such power to corporations such as The Knapp Foundation by providing "[a] corporation created by special act may accomplish any or all amendments permitted in this article, in a manner and subject to the conditions provided in this article". (N-PCL 801 [c].) The limitation upon the power of membership corporations to change its corporate purpose (Membership Corporations Law § 30) was not continued upon the adoption of the N-PCL, although article 8 of the N-PCL was expressly based upon, inter alia, Membership Corporations Law § 30. (See, Explanatory Memoranda, McKinney's Cons Laws of NY, Book 37, Not-For-Profit Corporation Law, art 8, p XX.) Basic rules of statutory construction declare that any material change in the language of the original act is presumed to indicate a change in legal rights. (1A Sutherland, Statutory Construction § 22.30 [4th ed]; Lamport v Smedley, 213 N.Y. 82.) Accordingly, based upon the fact that the N-PCL accords all corporations created by special act unfettered power to change their corporate purpose, and since the broad power to amend the corporate charter established by the N-PCL is in marked contrast to the restricted powers of membership corporations *474 under prior law, the Foundation was legally authorized to amend its certificate of incorporation to change its corporate purpose.
We are thus presented with a clear conflict between the provision of the N-PCL granting the Foundation the power to change its corporate purpose, and the restrictive provision of the statutory corporate charter. Not-For-Profit Corporation Law § 103 (c) is designed to address and resolve such conflicts, and provides: "(c) If any provision in articles one to thirteen inclusive of this chapter conflicts with a provision of any subsequent articles or of any special act under which a corporation to which this chapter applies is formed, the provision in such subsequent article or special act prevails. A provision of any such subsequent article or special act relating to a matter referred to in articles one to thirteen inclusive and not in conflict therewith is supplemental and both shall apply. Whenever the board of a Type B corporation, formed under a special act, reasonably makes an interpretation as to whether a provision of the special act or this chapter prevails, or both apply, such interpretation shall govern unless and until a court determines otherwise, if such board has acted in good faith for a purpose which it reasonably believes to be in the best interests of the corporation, provided however, that such interpretation shall not bind any governmental body or officer." This provision was enacted on recommendation of the Joint Legislative Committee to Study Revision of Corporation Law. (L 1972, ch 961.) The legislative history of Not-For-Profit Corporation Law § 103 (c) sets forth the intended function of the section: "The bill would amend section 103(c) to provide that if the board of directors of a corporation formed under a special act reasonably and in good faith makes an interpretation as to whether such act or this chapter prevails, such interpretation shall govern unless and until a court determines otherwise but shall not bind a governmental body or officer." (Bill Jacket for L 1972, ch 961, p 11  Explanatory Memorandum on An Act to Amend the Not-For-Profit Corporation Law and the Benevolent Order Law, in Relation to Certain Technical Amendments Thereof; Submitted by: Joint Legislative Committee to Study Revision of Corporation Laws.)
In the instant case, the Foundation, a Type B corporation formed under a special act, made a determination that provisions of the Not-For-Profit Corporation Law § 801 (b) (2); (c), authorizing it to change its corporate purpose by certificate amendment, prevailed over a restriction upon use of the corporation's principal funds as contained in the special act of the *475 Legislature (L 1923, ch 21). Not-For-Profit Corporation Law § 103 (c) provides that where the corporate board reasonably makes an interpretation as to whether a provision of the special act or the Not-For-Profit Corporation Law prevails, "such interpretation shall govern unless and until a court determines otherwise, if such board has acted in good faith for a purpose which it reasonably believes to be in the best interests of the corporation" (emphasis added). Section 103 (c) recognizes that the reasonableness of the transaction is determined by the corporation's subjective finding that its action is in the best interests of the corporation. Bearing in mind that the certificate amendment was determined to be lawful by a Justice of the Supreme Court and the Attorney-General, the principal has been dormant for a number of years while still subject to Federal taxation, and there has been no allegation of bad faith on the part of the board of directors, it can hardly be said that the Foundation acted for a purpose which, from the perspective of the board of directors, was contrary to the best interests of the corporation or otherwise unlawful. Under the circumstances, I believe it is improper to hold the Foundation's actions unreasonable, as a matter of law, where it acted pursuant to clear statutory authority. (N-PCL 801 [b] [2]; 801 [c].)
N-PCL 522, which is primarily relied upon by the majority to invalidate the charter amendment permitting transfer of the corporate assets to a sibling corporation, does not apply to this case. The legislative history of N-PCL 522 unequivocally establishes that its so-called "quasi-cy pres" principles are wholly inapplicable to the instant case. Section 522 was enacted by Laws of 1978 (ch 690). In a report attached to the sponsor's memorandum for chapter 690, it was stated that the proposed act "is * * * inapplicable to any interests held for private beneficiaries, even though a not-for-profit corporation may be a remainderman." (Legislative Bill Jacket, L 1978, ch 690, Report, p 2 [emphasis added].) It was the clear intent of the draftsmen of the N-PCL that Type B corporations were not to administer interests held for private beneficiaries. (Note, New York's Not-For-Profit Corporation Law, 47 NYU L Rev 761, 777; Internal Revenue Code [26 USC] § 501 [c] [3].) As it can hardly be denied that the individual plaintiffs are "private beneficiaries", in contrast to those members of the general public who could be said to derive benefits from other charitable organizations, the "quasi-cy pres" principles of N-PCL 522 are inapplicable to the instant case.
Moreover, in terms of a conceptual, sequential application of N-PCL 522, 513, the first step is to identify the corporate *476 purpose. If the applicable gift instrument is consistent with the terms of the corporate purpose, no release or reformation is needed. The purpose of N-PCL 513 is to bring the administration of assets received by a not-for-profit corporation under the umbrella of corporation law, rather than trust law. (Note, New York's Not-For-Profit Corporation Law, 47 NYU L Rev 761, 785; Explanatory Memoranda, McKinney's Cons Laws of NY, Book 37, Not-For-Profit Corporation Law, art 5, p XXX.) The problems inherent in the application of trust principles to charitable corporations have been well documented. (Taylor, A New Chapter in the New York Law of Charitable Corporations, 25 Cornell LQ 382.) The starting point of analysis under N-PCL 513, 522 is the "purpose specified in its certificate of incorporation", and if "the purposes specified in the gift instrument" are deemed to be inconsistent with the said corporate purpose, only then are the "quasi-cy pres" principles invoked. It is clear, from an analysis of the totality of the legislative scheme, that where, as here, donative intent is consistent with the lawfully achieved corporate purpose, resort to cy pres is unnecessary. To hold otherwise would be to remove not-for-profit corporations from under the umbrella of corporation law, and place such entities within the scope of trust law which rigidly places primary emphasis upon the terms of the gift instrument.
The anomalous results which would obtain under an analysis which deprives a not-for-profit corporation of the power to change its corporate purpose is well exemplified by an application of N-PCL 522 (c). Section 522 (c) provides that "[a] release under this section may not allow a fund to be used for purposes other than the purposes of the corporation". Even if the Foundation utilized the "quasi-cy pres" principles of section 522 and achieved release from the limitation upon transfer of the principal recognized in the original legislative charter, the release would not enable the funds to be used for purposes other than the stated purposes of the corporation. (N-PCL 522 [c].) This result is clearly unintended by the N-PCL.[1]
Scholarly commentary supports the view that amendment of the corporate charter by the trustees of a charitable corporation, in an effort to change a corporate purpose, is a legitimate alternative to the cy pres doctrine. It has been said, "[w]hen there is a general statutory authority allowing amendment of a *477 corporate charter, the corporation and its board of trustees are the proper parties to institute the amendment process * * * [Where there exists charitable intent], and where performance on the original terms is either impractical or illegal, amendment may be merely an exercise of the power of cy pres. And even though the situation inviting change is not extreme enough to make possible a rationalization on cy pres principles, it would seem that amendment, where reasonably necessary, should be allowed though contrary to terms of a gift that may have been fixed by a donor living in a different age". (Note, The Charitable Corporation, 64 Harv L Rev 1168, 1178-1179; see also, Scott, Education and the Dead Hand, 34 Harv L Rev 1, 17.)
Inasmuch as there exists express authority to permit a not-for-profit corporation created by statute to change its corporate purpose, the N-PCL embraces a policy against governmental interference within "reasonable" corporate practices, and application of cy pres principles to not-for-profit corporations with private beneficiaries was not contemplated by the drafters of N-PCL 522, I would hold the Foundation has lawfully changed its corporate purpose and is free to transfer property consistent with its statutorily authorized and court-approved corporate purpose.[2]
*478 One final point deserves mention. The Attorney-General, who is accorded broad supervisory powers over the administration of not-for-profit corporations and charities, would have been a proper, if not necessary, party to the instant action. The benefit of the independent counsel of the Attorney-General, as to the applicability of N-PCL article 5 to interests held for private beneficiaries, which was neither argued nor briefed before this court, and whether approval of corporate amendments by the Attorney-General and a Justice of Supreme Court are merely "pro forma" exercises as urged by the majority, would have been appropriate. I would set this case down for reargument to explore the two foregoing premises of the majority, with full participation of the Attorney-General.
Order modified in accordance with the opinion herein and, as so modified, affirmed, with costs to plaintiffs.
NOTES
[1] Type B corporations "may be formed for any one or more of the following non-business purposes: charitable, educational, religious, scientific, literary, cultural or for the prevention of cruelty to children or animals" (N-PCL 201 [b]).
[2] A further ground for dismissal as to the corporate plaintiff was that the New Jersey decision having been appealed, there was another action pending. The parties' briefs inform us that dismissal of the New Jersey action was affirmed on August 6, 1984 and do not indicate that a further appeal ensued. Accordingly, we deem the other action pending ground moot.
[3] The Foundation's petition for approval of its plan of dissolution and the distribution of its assets begun by order to show cause served upon plaintiffs and the Attorney-General and returnable October 5, 1983, remains pending, apparently awaiting determination of the present appeal. In light of the conclusion reached by us, consolidation of that proceeding with this action would appear to be in order.
[4] Giving such notice appears particularly appropriate in view of the interrelationship between the charter amendment and the dissolution and would facilitate consolidation of the dissolution proceeding with this action.
[5] Defendant does not dispute that its funds, obtained by inter vivos gift from Joseph Knapp, were to be used only for the purposes stated in the special act by which it was created in 1923, as amended in 1927 (see, Lefkowitz v Lebensfeld, 51 N.Y.2d 442, 446; Sherman v Richmond Hose Co., 230 N.Y. 462).
[6] This is the statutory codification of cy pres (see, Greenfield, Practice Commentary, McKinney's Cons Laws of NY, Book 17B, EPTL 8-1.1, 1984-1985 Pocket Part, pp 167-169; 18 NY Jur 2d, Charities, § 48, at 232).
[7] The apparent contradiction between section 513 (a)'s direction that the corporation "shall not be deemed a trustee of an express trust" and the incorporation of cy pres doctrine in the N-PCL appears to be explained by the January 13, 1969 Memorandum of the Joint Legislative Committee to Study Revision of Corporation Laws (reprinted in McKinney's Cons Laws of NY, Book 37, Not-For-Profit Corporation Law, p XV): "The case law giving charitable corporations full ownership of property received by them in trust for a corporate purpose is codified * * * The board is under a duty to apply such funds in accordance with the directions of the donor, but within the framework of the corporation law rather than the trust law." The case law referred to is St. Joseph's Hosp. v Bennett (281 N.Y. 115, 123), which held that, "The charitable corporation is not bound by all the limitations and rules which apply to a technical trustee. It may not, however, receive a gift made for one purpose and use it for another, unless the court applying the cy pres doctrine so commands." That this was the legislative intent see Legislative Studies and Reports (McKinney's Cons Laws of NY, Book 37, Not-For-Profit Corporation Law § 513, p 162) which states: "This section codifies St. Joseph's Hospital v Bennett, 281 N.Y. 115, 22 N.E.2d 305 (1939), but goes beyond that decision in providing the framework for administration of such assets within the principles of the corporation law rather than the trust law. Even if trust language is used in the conveying instrument, the receiving corporation acquires full ownership of the fund or property, subject to the duty of the directors to follow the directions of the donor."
[8] The January 13, 1969 Memorandum of the Joint Committee to Study Revision of Corporation Laws (reprinted in McKinney's Cons Laws of NY, Book 37, Not-For-Profit Corporation Law, p XXII) states that, "This is a codification of the `cy-pres' doctrine"; the March 8, 1969 Memorandum of the Joint Committee (reprinted in McKinney's Cons Laws of NY, Book 37, p XXXIII) states that: "The `cy-pres' provision in section 1004 (a) (3) (A) [sic, should read 1005] of the proposed bill has been clarified to apply to assets received and held by the corporation for a purpose specified as Type B in paragraph (b) of section 201 or which are legally required to be used for a particular purpose (section 1005 (a) (3) (A)). These purposes would normally be of a charitable or trust character. A similar adjustment has been made in section 1008 (a) (15) which vests cy-pres power in the supreme court"; and the comment in the annotation to section 1005 under Legislative Studies and Reports (McKinney's Cons Law of NY, Book 37, pp 425-26) refers to assets held for a Type B purpose or which are legally required to be used for a particular purpose as "`cy-pres'-type assets."
[9] Thus the dissent is simply in error in suggesting that we have held "the Foundation's actions unreasonable, as a matter of law" (dissenting opn, p 475) or deprived "a not-for-profit corporation of the power to change its corporate purpose" (p 476). It also errs in that (1) by express provision of N-PCL 103 (c) that section insulates the interpretation of applicable law by the board of a Type B corporation only "unless and until a court determines otherwise"; (2) the instant case does not involve an interest "held for private beneficiaries" of which a not-for-profit corporation is a remainderman, but rather is one in which the only funds of the corporation were received by it as a present gift subject to the limitation that they be used for the benefit of a specified and limited class of persons; (3) N-PCL 522 (c) only limits a use that would be ultra vires; it does not foreclose a use permissible under an amended charter which is within the donor's original purpose, or, though beyond that original purpose, has been made permissible by application of cy pres (522 [d]); (4) nothing in the statute or its legislative history indicates an intent, as suggested in footnote 1 of the dissent, to apply sections 513 and 522 only to gifts subsequent to the original gift; and (5) if, as the dissent argues, a charter amendment can authorize a dissolution which entirely frees the donor's funds of his stated purpose, the provisions of N-PCL 1005 (a) (3) (A) and 1008 (a) (15), which limit use of such funds in the hands of the acquiring corporation unless a New York court in the exercise of its cy pres function authorizes otherwise, are rendered meaningless.
[1] N-PCL 513, 522 would continue to play an important role in the administration of Type B corporations. Gifts or other transfers to corporations, subsequent to the initial grant under the legislative charter, would be administered in accordance with N-PCL 513, 522.
[2] In footnote 9 of its opinion, the majority demonstrates a general misapprehension of the arguments set forth in the dissent. N-PCL 103 (c) provides that "[w]henever the board of a Type B corporation, formed under a special act, reasonably makes an interpretation as to whether a provision of the special act or this chapter prevails, or both apply, such interpretation shall govern unless and until a court determines otherwise" (emphasis added). A fair construction of this provision indicates that a reasonable interpretation will govern unless and until a court determines "otherwise", to wit: that the interpretation was unreasonable. In view of the approval of the specific amendment at issue by a Justice of the Supreme Court, we are presented with an affirmed finding of fact that the amendment was reasonable, and thus lawful. By reversing the determination of reasonableness by two courts below, the majority holds the Foundation's actions unreasonable as a matter of law. The majority curiously misreads the legislative history of N-PCL 522. As previously stated (ante, p 475), the Laws of 1978 (ch 690), by which section 522 became law, "`is * * * inapplicable to any interests held for private beneficiaries, even though a not-for-profit corporation may be a remainderman.'" The majority reformulates this legislative history by asserting "the instant case does not involve an interest `held for private beneficiaries' of which a not-for-profit corporation is a remainderman." Contrary to the view of the majority, section 522 is inapplicable to any interests held for private beneficiaries, including, but not limited to, interests held for private beneficiaries of which a not-for-profit corporation is a remainderman. The majority's strained application of section 522 (c) is unauthorized. N-PCL 203 (a) provides that no act of a corporation shall, if duly approved or authorized by a Judge, court or administrative department or agency as required, be deemed ultra vires. As the amendment in question was approved by a Justice of the Supreme Court and the Attorney-General, resort to the doctrine of ultra vires is wholly inappropriate.